## VICKSBURG BANK v. W. O. WORRELL, TAX COLLECTOR.

1. CONSTITUTIONAL LAW. *Taxation. Subjects of. Power of legislature.*
   The legislature may select the subjects of taxation, and everything not designated as taxable is for the time being exempt.

2. TAXATION. *Equality and uniformity. Legislative discretion. Const., Art. XII. § 20.*
   The subjects of taxation may be classified at the discretion of the legislature, and if all of the same class are taxed alike there is no violation of the constitutional requirement of equality and uniformity.

3. SAME. *Constitutional law. Power of the legislature. Privilege tax.*
   The legislature may impose a specified tax upon a business and may provide that it shall be a substitute for all other taxes on the means employed in it.

4. SAME. *Legislative discretion. Constitution, Art. XII. § 20. Judicial interference.*
   A large discretion is given to the legislature in enforcing the constitutional requirement that taxes be equal and uniform, and unless it has plainly violated this provision the courts will not interpose.

5. EXEMPTION FROM TAXATION. *Legislative power. Const., Art. XII. § 16. Right of counties to tax.*
   The power of the legislature to exempt property from taxation is not abridged by the above section of the constitution, which provides that no county shall be denied the right to raise by special tax money sufficient to pay for the building and repair of court houses, jails, bridges, and other necessary conveniences for the people of the county. The right of the counties is limited to a levy of a certain per cent. on all tax levied by the state, and the subjects of taxation may be determined by the legislature.

6. CONSTITUTIONAL LAW. *Banks. Taxation thereof. Privilege tax. Act of March 8, 1888.*
   The provision of the revenue act of 1888 (Laws 1888, p. 16), which imposes upon banks a tax, to be measured by their capital stock and assets, and to be in lieu of all other taxes, state, county and municipal, upon their shares and assets, does not violate any provision of the constitution of the state.

7. SAME. *Banks. Sufficiency of privilege tax. How measured.*
   The privilege tax upon a bank under the act of 1888 aforesaid, to be effectual as a release from liability for all other taxes, must be measured by the capital stock and entire assets or wealth of the bank, including profits, surplus, undivided profits, or its assets by whatever name called.

8. BANKS. *Exemption. Act of March* 8, 1888. *Real estate. Privilege tax.*
   Real estate bought with the funds of a bank was exempt under said act of 1888, from ordinary *ad valorem* taxes, but was part of the assets of the bank to be considered in fixing the basis of its privilege tax.

9. SAME. *Taxation. Right to hold real estate. Collateral inquiry.*
   In a proceeding to determine the liability of a bank to pay taxes on its real estate, the right of the bank to acquire and hold such real estate will not be considered.

FROM the chancery court of Warren County.

HON. W. R. TRIGG, Chancellor.

The Vicksburg Bank filed this bill, seeking to enjoin the appellee, the sheriff and tax collector of Warren county, from selling for taxes a lot with the buildings thereon, situated in the city of Vicksburg. The bill alleges that complainant, in December, 1887, invested a part of its capital stock and assets in the purchase of the said lot and buildings, occupied by it since in carrying on its banking business; that in 1887 the lot was assessed to its then owner, from whom complainant purchased; that pursuant to the revenue act of 1888 (Laws 1888, pp. 8–20) complainant paid into the state treasury the amount of privilege tax required by said act and received the privilege tax license by law specified for the year 1888, which by the provisions of the act was in lieu of all other taxes, state, county and municipal, upon the shares and assets of said bank; that the board of supervisors were notified of the purchase by the bank, of the payment of the privilege tax, and the exemption claimed by the bank; that the board of supervisors refused to strike the land from the assessment roll.

The bill further alleges that said property was likewise assessed by the city of Vicksburg for city taxes for the year 1888, although not given in for assessment by any one, and that the board of aldermen likewise refused to strike the lot from the city assessment roll; that the property was advertised by appellee, as tax collector, for the taxes claimed to be due the state, county and city. The bill prayed for an injunction against the said tax collector, upon the ground that said property was exempt from taxes other than the privilege tax under the above-mentioned act of 1888.

The clause of said act relied on is as follows : " And the privilege tax imposed upon and paid by such banks of deposit or discount shall be in lieu of all other taxes, state, county and municipal, upon the shares and assets of said banks."

Injunction was issued as prayed for, and the defendant appeared and moved to dissolve the injunction and dismiss the bill : (1) because there is no equity upon the face of the bill; (2) the bill shows no sufficient cause why the lot should not be sold for taxes; (3) the taxes levied by the board of supervisors are legal and are unpaid; (4) the payment of the privilege tax cannot operate to exempt the said real estate; (5) the bill failed to state the amount of capital stock and assets of said corporation and the price paid for the said privilege, so that the court could determine whether the lot was included in the assets protected by the said tax.

By his answer, which accompanied the motion to dissolve, the defendant alleged that the total tax levied for 1888 by the state, county and city amounted to thirty-six mills on the dollar, and at the assessed valuation of the lot and buildings the tax due thereon was $648 ; whereas the complainant paid a privilege tax of only $750, which, it is contended by complainant, exempts it from all other taxes on not only the said lot, but its capital stock of $75,000.

The answer further submitted to the court that the said act of the legislature, in so far as it undertakes to relieve the bank from payment of the same taxes assessed to individuals in said city and county, was in contravention of art. xii, § 13, of the constitution of the state of Mississippi, to wit : " The property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals ;" and also in violation of section 20 of the same article of the constitution, to wit : " Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be assessed by law."

The answer further set up that among the taxes levied by the board of supervisors of said county for the year 1888 was a special tax of one-half mill per thousand dollars for the repairing of the court-house of the county, and that a large portion of the money raised by the board of supervisors by taxation was annually

expended by it for bridges and other necessary conveniences for the people of the county; and that the said act of 1888, in so far as it attempted to relieve the bank from any county tax, violates section 16, art. xii, of the constitution of the state, which is as follows: "No county shall be denied the right to raise by special tax money sufficient to pay for the building and repairing of court-houses, jails, bridges and other necessary conveniences for the people of the county; and money thus collected shall never be appropriated for any other purpose; provided the tax thus levied shall be a certain per cent. on all tax levied by the state."

The point is also raised in the answer that only a small part of the buildings on the lot in question is used by complainant as a banking house, while the rest is rented for other purposes, and that the word "assets" in the statute must be taken to mean only such personal property as is necessary to carrying on the banking business; but if mistaken in this view, respondent contends that by the charter of said bank it was allowed to acquire and hold only so much land as may be necessary from time to time to the transacting of the business or as may be acquired in payment of debts due to the bank, and the buildings in question were not thus acquired; and that complainant cannot, even if the said act of 1888 is valid and effectual, enjoin without tendering the taxes due on that part of the buildings not used for banking purposes.

By agreement the case was submitted to the court upon the bill, answer and motion to dissolve, waiving all objection as to the manner in which the several questions were presented.

The court by its final decree dissolved the injunction and ordered the lot sold to pay the taxes assessed against it, and from this decree the complainant appeals.

*Birchett & Gilland*, for the appellant.

1. That the act of 1888 is constitutional as to the state, we have only to refer to *Mississippi Mills* v. *Cook*, 56 Miss. 41, in which the right and power of the legislature to exempt the property of corporations from taxation was decided after full argument and full consideration. The exemption of railroads in process of construc-

tion, given by the proviso to section 608 of code of 1880, is also affirmed in *Y. & M. V. R. R. Co.* v. *Thomas et al.*, 65 Miss. 553.

The *same kind of statute* has been applied to railroads since 1880 (Code of 1880, §§ 597, 608), and has never been questioned, but rather impliedly recognized and affirmed in that case.

2. The act of 1888, being constitutional as to the state, is constitutional as to the county and city. They have no·inherent right or power of taxation, but can exert such only as is conferred by the legislature. *R. R. Co.* v. *Jackson*, 38 Miss. 334; *Dailey* v. *Swope*, 47 Ib. 367; *Beck* v. *Allen*, 58 Ib. 143.

But, even if the county has the inherent right of taxation under section 16 of art. xii, of the constitution, as held by Judge Campbell in his dissenting opinion in *Beck* v. *Allen, supra,* still the act of 1888 is constitutional as to the county, for the county tax thereby authorized must "be a certain per cent. on all tax levied by the state," so that only that property which is taxed by the state can be taxed by the county under that power. No one will contend that the property of railroad companies which have paid the privilege tax imposed by §§ 607, 608 of the code of 1880, is liable to taxation by a county under section 16 of art. xii, of the constitution.

3. The legislature did not intend to include the real estate of banks in words "shares and assets of said banks."

We must be guided by the *plain meaning* of the words. *So. R. R. Co.* v. *Jackson*, 38 Miss. 334; Cooley on Taxation (first edition), 198.

"Assets are property, whether *real or personal*, available for the payment of debts of a person, estate, or corporation." Abb. Law Dict.; 1 Am. & Eng. Enc. of Law, 824, 825.

What is there in the act of 1888 to impress on the word "assets" a different meaning from that given to the word by the legislature in section 2025 of the code of 1880? The law-making power has itself defined the word so as to include real estate, and has not left it to the courts to construe. Cooley on Taxation, 198.

"Shares" is equivalent to "capital" or "capital stock," as appears from the language of the act itself. *Baltimore* v. *B. & O.*

*R. R. Co.*, 6 Gill, 288 ; *Bank of Georgia* v. *Savannah,* Dudley, 132 ; *Bank of Cape Fear* v. *Edwards,* 5 Ired. (Law), 516 ; *People* v. *Commissioners,* 23 N. Y. 222 ; Cooley on Taxation, 164.

Where the capital stock of a bank was exempted from taxation by its charter, all its property, real or personal, was held to be exempt. *New Haven* v. *City Bank,* 31 Conn. 106 ; *Richmond* v. *Richmond & Danville R. R. Co.,* 21 Gratt. 604 ; *Baltimore* v. *B. & O. R. R. Co.,* 6 Gill, 288 ; *New Jersey* v. *Yard,* 95 U. S. 104 ; *Osborn* v. *N. Y. & N. H. R. R. Co.,* 40 Conn. 491.

Where a certain tax is levied upon the stock of banks in lieu of all other taxes, the real estate of the bank is not liable to additional state, county, or municipal taxation. *Covington* v. *City National Bank of Covington,* 21 Fed. Rep. 484.

4. The meaning of the legislature can sometimes be obtained by reference to kindred statutes. Cooley on Taxation, 198.

Sections 607 and 608 of the code of 1880 levy a privilege tax on railroads ; " provided, that the lands owned by railroad companies are not used in operating the railroads, shall be taxable as other property and for all purposes."

Section 585 of the code (repealed in 1886) levied a privilege tax on banks, but provided that in no case should the payment of the privilege tax exempt any real estate of such bank from taxation as other real estate.

The act of 1886 levied a privilege tax on building associations whose *stock or shares* represented monthly payments of certain amounts ; which should be in lieu of all other taxes, state, county, or municipal, *except on real estate.*

Real estate, not being excepted in the act of 1888, is necessarily included in the exemption.

5. The tax laid by the act of 1888 is imposed by the general law, and the exemption is made by the same general law, without any reference to the charter of the Vicksburg Bank, or any other bank, or to the fact of the existence of any charter to any bank taxed. The two laws are entirely distinct, and have no reference the one to the other.

*J. Hirsch* and *Murray F. Smith,* for appellee.

1. If the legislature can, under the guise of privilege taxes, establish a scheme for the levying and collecting of all the taxes required by the state, section 20 of the constitution can be practically ignored. In condemnation of such legislation, see *Knowlton* v. *Supervisors,* 9 Wis. 410. The rules of taxation peculiar to privilege taxes and exemptions must not be perverted so as to permit unjust and invidious and discriminating legislation, whereby objects of legislative bounty can by exercising the privilege pay fifty per cent. less taxes than that imposed upon property specifically selected for taxation.

2. But if the act of 1888 does not violate said section 20, it does contravene section 16, art. xii, of the constitution. If the legislature can exempt banks from all taxation by counties, it also has the power to extend to all other individuals and property similar privileges, and thus evade this plain constitutional requirement, and thus deny to counties the right given to them under the constitution. The proviso in the section that the tax levied by counties shall be a certain per cent. of the state tax, does not change or destroy the power conferred by the first clause. Saving clauses are never allowed to overturn or destroy a right already conferred. Blackwell Tax Titles, 724. If the legislature cannot directly deny the county the right to raise money by special tax, it cannot indirectly accomplish the same purpose by refusing to levy a state tax.

3. If the legislation is sustained, still the complainant cannot claim exemption as to its real estate. An act must be construed to give it a reasonable effect. Blackwell Tax Titles, 706. This act will be strictly construed. The relinquishment of the taxing power of a state is never to be presumed. *Chicago, etc., R. R. Co.* v. *Guffey,* 120 U. S. 569. The word "assets," as used in the statute, cannot be held to include real estate. Banks do not, as a rule, buy or invest their means in real ·estate. The term "banks of deposit or discount" is expressly used in the act. The exemption must be held to apply only to such assets as are usually held by banks. For discussion as to what is to be deemed as included in the term "capital stock," see *R. R. Co.* v. *Gaines,* 97 U. S.

697. A reason for the statutory rule is found in the fact that the assets of banks generally consist of money and negotiable securities, which, as a rule, escape taxation, and the privilege-tax plan was devised to provide for the payment of a fixed sum instead of a specific levy. The association of the words "shares and assets" with the words "shares or capital stock" clearly indicates that this class of property alone was intended. "*Noscitur a sociis.*"

4. But if the term assets be held to extend to real estate, we submit that only so much thereof as is used by the bank for banking purposes will be exempt. In *M. & O. R. R. Co.* v. *Moseley,* 52 Miss. 127, it is held that lands of a railroad company detached from the road are not exempted by a statute exempting its corporate property. Nothing is exempt to it but the land necessary to the business of the corporation. Cooley on Taxation, 146–153. See *McCulloch* v. *Stone,* 64 Miss. 378. If this is not true, a bank could buy a whole business block in a city and use only one room, and claim it all as exempt under the statute.

5. If the court should decline to adopt any of the foregoing views, we submit finally that a bank authorized by its charter to purchase and hold real estate necessary for the transaction of its business, or acquired in the payment of debts, cannot buy land confessedly not necessary to its business, and claim relief as to it from the burdens imposed upon other tax payers. *Bank* v. *Tennessee,* 104 U. S. 493.

*Edward Mayes,* on the same side, filed a lengthy brief, discussing all the questions involved, making the following points: The statute is in violation of sec. 20, art. xii, of the constitution. (1) The arrangement made by the statute, although a seeming privilege tax, is in effect a tax on property; and as such is neither equal nor uniform. (2) Even if it be considered as a privilege tax in truth, still it is unequal and void.

The terms "capital stock" and "assets" are not synonymous. "Assets" include capital stock, but not *vice versa.* For the distinction between the terms and definitions thereof, see *State* v. *Morristown Fire Ass'n,* 3 Zab. (N. J.) 195; *Union Bank* v. *State,* 9 Yerg. 490; *Bank* v. *Milwaukee,* 18 Wis. 281; *Bank* v. *City Coun-*

*cil,* 3 Rich. 346 ; *Barry* v. *Merchants' Exchange,* 1 Sandf. Ch. 280; *Reid* v. *Eatonton Mfg. Co.,* 40 Ga. 98 ; *Bank* v. *Townsend,* 5 Blatch. 315 ; *Insurance Co.* v. *Mayor,* 8 N. Y. 241 ; *People* v. *Commissioners,* 23 Ib. 222 ; *State* v. *R. R. Co.,* 30 Conn. 290 ; *Bailey* v. *Clark,* 21 Wall. 284 ; *Farrington* v. *Tenn.,* 95 U. S. 679.

The use of the disjunctive, *capital stock or assets,* shows that they are different things. The obvious meaning then is that if the capital stock exceeds the assets, the former shall fix the privilege tax, and if the assets exceed the capital stock, the assets shall be looked to.

The inequality of this system of taxation is manifest from a comparison of this tax on banks and that levied on all other property. This tax on banks is 10 mills, based on the capital stock or assets, while the state tax alone on other property is 4 mills, the county from 9 to 11 mills, and besides municipal taxes not regulated. A bank with $500,000 of capital or assets will pay only $2000, an amount equal to the state tax alone, of 4 mills, on other property. See *Mobile* v. *Stonewall Ins. Co.,* 53 Ala. 570 ; *Perry Co.* v. *Railroad Co.,* 65 Ib. 391 ; *State Auditor* v. *Jackson County,* Ib. 142 ; *State* v. *U. S. Express Co.,* 60 N. H. 219 ; *State* v. *Winnebago, etc., Co.,* 11 Wis. 40 ; *Gillman* v. *Sheboygan,* 2 Black, 510 ; *Exchange Bank* v. *Hines,* 3 Ohio St. 15 ; *People* v. *Weaver,* 100 U. S. 539. The substance and not the form of a tax is to be looked to in determining whether it is equal and uniform. Burroughs on Taxation, 69, and cases cited. *Home Ins. Co.* v. *New York,* 119 U. S. 129.

The scheme cannot be upheld on the idea that the tax is a commutation tax. A commutation tax which proceeds on an exact valuation in arithmetical terms, of the subject of the tax as is here the case, and exacts money in the commuted form of the tax, as is also the case here, is a thing unknown as I believe ; certainly I have found no such case. This tax gives a release of the ordinary tax without any return whatever. *Cooper* v. *Ash.* 76 Ill. 11.

If this were a commutation tax, it would be void because violative of art. xii, § 20, of the constitution, that taxation must be *ad valorem. Zanesville* v. *Richards,* 5 Ohio St. 590. '

If the tax be considered as a tax upon privilege and not·a disguised tax on property, it is void because not equal and uniform as between banks.   The tax on a bank having $11,000 stock is about 22.8 mills, while it is less than 2· mills if the stock is over $1,000,-000.   *State* v. *Winnebago, etc., Co.,* 11 Wis. 39 ; *St. Louis* v. *Spiegel,* 90 Mo. 587 ; *New Orleans* v. *Ins. Co.,* 23 La. An. 449 ; *State* v. *Endom,* Ib. 663 ; *Parrish* v. *Gurth,* 26 Ib. 140 ; *Sullivan* v. *City,* 28 Ib. 102 ; *Cutliff* v. *Albany,* 60 Ga. 597 ; *Johnston* v. *Macau,* 62 Ib. 645 ; *Livingston* v. *Albany,* 41 Ib. 21 ; *State* v. *Cumberland, etc., R. R. Co.,* 40 Md. 22 ; *Ex parte Thornton,* 4 Hughes, 220 ; Cooley on Taxation, 169.

*Nugent & McWillie,* on the same side, submitted a written argument and brief reviewing all the points involved and citing in addition to cases already noted in the briefs of. associate counsel: Cooley on Lim. (5th Ed.), 616 ; *Glascow* v. *Rause,* 43 Mo. 479 ; *Franklin Ins. Co.* v. *State,* 5 W. Va. 349.   The following conclusions are drawn from said argument : There are in general four methods of taxing corporate interests.   They are (1) by a tax on the franchise ; (2) on the capital stock ; (3) on· the real and personal property of the corporation ; (4) by a tax on the shares of the stock in the hands of the stockholders.   Cook on Law of Stock and Stockholders, § 561.   In this case none of these methods seems to have been adopted ; but the legislature appears to have compounded, in an arbitrary and unjust way, with the banks of the state and allowed them to pay a pittance into the treasury, while the people are subject to the ordinary revenue laws of the state.

The " equal protection" of this " benign statute" does not fall like the rain of heaven on the "just and unjust."   Its narrow circle hedges in only the banks that are never subjected to loss of any kind or to the chances or changes of seasons.

CAMPBELL, J., delivered the opinion of the court.

This case presents questions as to the validity and interpretation of that part of the act to amend §§ 557 and 585 of the code of 1880, so as to increase the public revenue, approved March 8, 1888, which relates to banks.   It provides for a privilege tax to

be paid by banks, and varies the amount with reference to the "capital stock or assets," and declares that "the privilege taxes imposed upon and paid by such banks    *    *    *    shall be in lieu of all other taxes, state, county, and municipal, upon the shares and assets of said banks."

The act is assailed as being violative of the constitution of the state, which declares that, "The property of all corporations for pecuniary profits shall be subject to taxation the same as that of individuals," Art. xii, sec. 13 ; and, "No county shall be denied the right to raise by special tax money sufficient to pay for    *    *    * conveniences for the people of the county ; provided, the tax thus levied shall be a certain per cent. on all tax levied by the state," Art. xii, sec. 16 ; and "Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law," Art. xii., sec. 20. These provisions of the constitution have been the subjects of discussion and adjudication by this court in several instances, and we refer to the *Mississippi Mills* v. *Cook,* 56 Miss. 40 ; *Beck* v. *Allen,* 58 Ib. 143 ; and *Murray* v. *Lehman,* 61 Ib. 283, as presenting what has been said and held, and proceed to state the conclusions we have reached in this case, after full examination and consideration.

The legislature may select the subjects of taxation, and everything not designated as taxable is exempt for the time being.

The subjects of taxation may be classified at the discretion of the legislature, and if all of the same class are taxed alike there is no violation of the equality and uniformity required by the constitution.

It is admissible for the legislature to tax a business, and to provide that payment of a tax prescribed for the privilege of pursuing it shall be a substitute for and in lieu of all other taxes on the means employed in it. The liability to abuse is not an argument against the existence of this power. The constitution establishes the rule of equality and uniformity in the imposition of taxes, but absolute equality is not attainable, and large discretion must be left to the legislature in its effort to execute the con-

stitutional mandate, and it is only where there is a plain disregard of it that the courts can properly interpose to annul legislative action.

If the legislature deems it wise to compound for all other taxes on a particular kind of business, by receiving a prescribed sum as a substitute for all taxes, it must be assumed by the courts that it was the legislative determination that the sum fixed was a proper equivalent for the taxes obtainable in a different mode, and that it was a proper exercise of legislative power. This results, necessarily, from the legislative control over the subjects of taxation, restrained only by constitutional requirements, obligatory alike on the legislature and the courts. Where the particular arrangement of taxation provided by legislative wisdom may be accounted for on the assumption of compounding or commuting for a just equivalent, according to the determination of the legislature, in the general scheme of taxation, it will not be condemned by the courts as violative of the constitution.

It follows from these views that the act under consideration cannot be condemned under sec. 20 of art. xii, of the constitution.

Nor is it assailable under sec. 16, art. xii, for it is clear that the right of the counties under it is limited to the levy of "a certain *per cent.* on all tax levied by the state," and the subjects of taxation are to be determined by the legislature. It was held in *The Mississippi Mills* v. *Cook*, 56 Miss. 40, that the legislature may exempt property from taxation, whether the owners be corporations or natural persons, and this disposes of the suggestion of an objection to the act under examination because of sec. 13, art. xii, of the constitution.

We do not find any valid objection to the law as being beyond the power of the legislature, and the remaining inquiry is as to its meaning—the legislative intent deducible from its language.

We cannot resist the conviction that its plain purpose was to release all taxes on the entire assets of the bank for payment of the prescribed tax, *i. e.*, a tax measured by the capital stock and assets of the bank, which includes profits, surplus, undivided profits, or by whatever name any of its assets may be known or called, and

all the real and personal property of the bank.  The manifest purpose of the act is to accept in full of all other taxes a sum determinable by the entire wealth of the bank, and it results that the entire assets of the bank, in whatever shape, should be estimated in determining the amount of the privilege tax.  The privilege tax imposed upon and paid by a bank on this basis is made a substitute for all other taxes on the shares and assets of the bank.  Shares and assets represent or express everything a bank has.

Real estate bought with funds of the bank, and constituting part of its assets, is exempted as real estate, but is a factor in fixing the basis on which the amount of the privilege tax to be paid by the bank to secure immunity from all other taxes is determinable. The provision of the code of 1880, that " in no case shall the payment of the privilege tax on any bank have the effect to exempt any real estate of such bank from taxation as other real estate," was stricken from the law by the act of March 18, 1886, amendatory of section 585, and was not restored by the act of 1888, now under review, which makes clear the legislative purpose we have declared to be shown by the law—to increase the privilege tax by the assets of the bank in every form and of every kind, and to exempt its assets, because of payment of such privilege, in whatever shape they might be.

The right of the bank to acquire and hold real estate cannot be considered in the matter of taxation.  The intent of the legislature was to tax its assets, where they exceed its capital stock, without regard to its right to have them.  The question in taxation is, what are its assets?  and not the rightfulness of its possession of a given piece of property by the bank.

In tracing the history of taxation in this state it is discoverable that bank stock has not been taxed as such by name in the hands of the shareholder or owner, but was assessable to the bank.  This was the case under the codes of 1857 and 1871, and is true under the code of 1880, which adopted the privilege tax it provides as a substitute for other taxation, with a provision, already mentioned, for the taxation of the real estate of banks, notwithstanding payment of the privilege tax.

As we cannot find any conflict between the act of the legislature and the constitution, and the meaning of the law is unmistakable, however unwise and unjust it may be regarded, it must prevail according to its plain reading, and every bank which paid under it, according to its provisions, be held to have secured the immunity from other taxation which it assures. Any bank which did not estimate all of its assets beyond the amount of its capital stock and pay the privilege tax on the larger basis is in default, and did not secure the exemption from taxation declared by the law in favor of those which conformed to its terms.

*Decree reversed and cause remanded to the chancery court.*