STATE OF IOWA, Appellee, v. R. A. CATER, Appellant.

CRIMINAL LAW: Intent. An accused may testify directly to his
1  *intent* in doing an act, when the act is criminal if done with one intent, and not criminal if done with another intent. So held on a prosecution for being a transient merchant and refusing to pay a municipal license.

EVIDENCE: Facts Learned from Others. What a witness learned
2  from others as to the manner in which a party conducted his business, without any showing of personal knowledge on the part of the witness of the truth of the facts, is pure hearsay.

LICENSES: Criminal Prosecution—Selling Price of Goods. On a
3  charge that an accused was a transient merchant, and had refused to pay a license, evidence that the accused was selling his goods at a price in excess of the local value of the goods was wholly irrelevant.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

OCTOBER 18, 1918.

UPON an information filed in the superior court of Cedar Rapids, the defendant was convicted of violating a certain city ordinance. From the judgment entered in that proceeding, he appealed to the district court, where he was

again tried and again convicted, and he brings the case by further appeal to this court.—*Reversed.*

*Trewin, Simmons & Trewin,* for appellant.

*O. Elliott,* City Attorney, and *Frank H. Randall,* Assistant City Attorney, for appellee.

WEAVER, J.—The ordinance with violation of which the defendant is charged, provides as follows:

"Section 884.  Transient Merchants—Itinerant Vendors.—16.  Transient merchants or itinerant

1. CRIMINAL
   LAW: intent.

ant vendors shall be construed to mean and include all persons, principal or agent, who engage in a temporary or transient merchandise business in the city of Cedar Rapids and including those who, for the purpose of carrying on such business, hire, lease, or occupy any building, structure or railroad car for the exhibition and sale of such goods, wares and merchandise, shall pay a license fee of ten ($10.00) dollars per day while so engaged in such business."

The testimony tended to show that the defendant entered into some arrangement with a firm or business house known as C. F. Adams Company, having its principal place of business at Erie, Pennsylvania, by which defendant undertook to sell at retail, in the city of Cedar Rapids, certain classes of goods furnished him by said company. Defendant had long been a resident of the state, and, in September, 1916, came to Cedar Rapids for the purpose of entering the described business. He rented a store room, taking a lease for six months, and in a short time, had in stock goods received from the Adams Company to the amount of about $4,500, and employed several assistants. To some extent personally, but largely by his clerks or assistants, he canvassed for customers by visiting people at their homes, taking orders to be supplied from his stock.

The goods consisted largely of rugs, blankets, silverware, tea sets, vacuum cleaners, and other articles and conveniences for household and domestic use, and his sales were, for the most part, on time, for payments to be made in comparatively small amounts to a collector employed for that purpose. The compensation of the defendant, as well as that of his assistants, was on the basis of an agreed commission on sales made. This business the appellant continued at the same place until arrested, November 13, 1916, charged with a violation of the ordinance. The goods were not removed from Cedar Rapids, and were there assessed for taxation in January, 1917, at $3,538, and book accounts at $2,000.

The defendant, on being brought before the superior court, entered a plea of not guilty, was tried, found guilty, and adjudged to pay a fine. From this judgment he appealed to the district court, where he was again tried and again convicted and fined. At the opening of the trial, objection was raised by his counsel that the information on which he was prosecuted fails to charge any offense, and that the ordinance in question is unconstitutional. The objection was overruled, and this ruling is assigned for error.

On the trial, several witnesses for the prosecution testified to the nature of defendant's stock of goods and his manner of doing business, substantially as we have already stated. The evidence also tended to 2. EVIDENCE: show that the business done amounted to facts learned from others. about $1,000 per week. The assistant city attorney testified as a witness; and, over the objection of defendant, was allowed to state that he had visited the cities of Waterloo and Sioux City, and that at each place he learned that C. F. Adams & Company had, at one time, conducted a business there, but, after a period of some months, had ceased. While the wit-

ness states that he obtained his information by investigation, there is no showing of any kind from whom the information was received, or that he was able, of his own knowledge, to speak of the matters so testified to by him.

One of the persons who had served the defendant as an assistant or clerk was called, and identified a certain catalogue of goods and prices as being one used in defendant's business. Other witnesses, who are resident merchants of Cedar Rapids, were then examined, and, having their attention called to the catalogued prices of various articles, were permitted to state the fair market value of the same in Cedar Rapids in November, 1916. This testimony was objected to at each step, but was admitted. It tended to show that the catalogued prices on some of the goods were materially greater than the market value fixed by the witnesses. To illustrate what was allowed to pass as evidence, it may be said that, where the catalogue marked the prices of certain rugs at from $4.50 to $44, a merchant witness placed their values at from $3.25 to $36; and blankets catalogued at from $7.50 to $11.00 were estimated by him at from $6.25 to $8.75; also, that curtains catalogued at $9.00 were of the fair retail value of $7.50. On cross-examination, this witness said (we quote from the abstract) as follows:

3. LICENSES: criminal prosecution: selling price of goods.

"I have had no experience about selling through solicitors for payments in small installments. I do not know anything about the wringers on page 5 of the catalogue. I do not know the carpet sweepers marked 'Adams.' We do not have them. The prices I quoted on these goods were substantially cash prices, and not to sell by solicitors on small weekly payments. I do not mean to say that all rugs of the same size put out under the brand Axminster are the same quality. I cannot tell much about rugs, because that is not in my department. The prices I tes-

tified to were furnished by our rug man. I got my informa-
tion from him. (Mr. Trewin: I move to strike out the
testimony of this witness in reference to the prices of rugs
because he says he don't know personally anything about
it, and what he says is hearsay and secondhand. The
Court: Where did you get your information from? A.
From the rug manager in the rug department: that is, the
man that buys all these and marks them. The Court: Mo-
tion overruled. Defendant excepts.) The man down there
put the prices of these rugs on paper and I read the pa-
per, and that is all I know about the rugs. I do not know
whether the quality of the rugs in our store is the same
as the quality of the rugs in the catalogue. I have no per-
sonal knowledge about the quality of the rugs, and none
that they are the same as those in the catalogue. All I
know is about the list. (Mr. Trewin: Now I again move
to strike out all this witness' testimony about these rugs as
being hearsay, and secondary and incompetent. The
Court: The same ruling. Defendant excepts.) My line
in the store is china and glassware. I have no personal
knowledge about curtains that I testified to, as to prices
and values. I got that from our buyer in the curtain de-
partment. I am not testifying from personal knowledge.
The same is true about the couches. (Defendant moves
to strike out the testimony of the witness in regard to the
couches, as being incompetent, irrelevant, and immaterial.
Motion overruled. Defendant excepts.) I got my infor-
mation about blankets from our blanket man. I made no
personal comparison. What I have testified to is what he
told me. I brought the list to court and testified from it.
The same is true of the comforts. I have no personal
knowledge about the wholesale cost of these things, ex-
cept wringers and silverware. (The defendant moves to
strike out all the testimony of this witness in reference to
blankets, comforts, etc., because his testimony shows that

he has no personal knowledge of the matter, and his testimony is hearsay. The Court: Overruled. Defendant excepts.)"

Much of the record is given over to testimony of this same general character, though some of the witnesses claim to testify from their own personal knowledge as to values.

On the part of defendant, one Mitchell, manager of the Omaha branch of C. F. Adams & Company's business in the territory including Cedar Rapids, testified that he caused the Cedar Rapids branch to be established, in charge of the defendant, in September, 1916, and from that date he continued to ship goods to defendant until the latter was arrested in this proceeding. He also said he established a branch in Waterloo, which continued about ten months, when it was closed or suspended on account of the resignation of the local manager; and that he (witness) was then looking for another manager. In Sioux City, in the year 1915, he established another branch, which was still in operation at the time of the trial. There was still another branch in Des Moines, which had then been running over a year; also, branches in still other cities. From his further examination, we quote from the abstract the following:

"Q. Do you have, Mr. Mitchell, any intention of discontinuing the business of C. F. Adams Company in Cedar Rapids, if you are permitted to go on here? (Objected to as incompetent, irrelevant, and immaterial, and calling for the opinion and conclusion of the witness, and calling for his mental operations as to his intentions. The Court: Sustained. Defendant excepts.) Q. You may state whether it is the general custom and practice of C. F. Adams Co., in cities like Cedar Rapids and Waterloo, Sioux City, and Des Moines, after they establish a business there, to maintain it permanently. (Same ruling.) * * * Q. Do you know whether this stock has remained in Cedar Rapids

since Mr. Cater was arrested, and is still there? (Mr. Elliott: Objected to as being incompetent, irrelevant, and immaterial. The Court: Sustained. Defendant excepts. Mr. Trewin: They brought everything down to date about their business in Sioux City. The Court: I don't care to hear any arguments. Defendant excepts.)"

The defendant also testified in his own behalf, and, after telling of coming to Cedar Rapids from his former home to take charge of this business, he was asked by his counsel:

"Q. When you came to Cedar Rapids, you may state whether or not, after getting your business established, it was your intention to bring your family to live in Cedar Rapids. (Mr. Elliott: Objected to as incompetent, irrelevant, and immaterial, calling for the mental operation and conclusion of the witness. The Court: Sustained. Defendant excepts. Mr. Trewin: I think I have some authorities on that. The Court: That is calling for the expression of his intentions. I don't care for any argument on it,—it is too plain.) * * * Q. When you started this business in Cedar Rapids, did you intend to continue in it permanently? (Mr. Elliott: Objected to as being incompetent, irrelevant, and immaterial, and calling for the mental operation of the future intentions of the witness. The Court: That is sustained. Defendant excepts.) Q. When you opened up this business, did you have any other plan than to continue in it permanently? (Same objection, same ruling, and exception.) * * * Q. If permitted, will you continue your business in Cedar Rapids? (Mr. Elliott: Objected to as incompetent, irrelevant, and immaterial, calling for the after intention of the witness and his mental operation. The Court: Sustained. Defendant excepts.)"

There are other questions raised upon the admission and rejection of evidence; but we have spoken of suf-

ficient to indicate that the judgment below cannot stand, and a new trial must be ordered.

That the city has power to impose a license charge upon transient merchants is to be conceded; and that one who is a transient dealer in fact cannot avoid liability under the ordinance by the expedient of carrying on his temporary business in a building or car or other structure, is also true. But the mere fact that a given business is newly established, or has been carried on but a short time, or that the proprietor has but recently come to the city or town, or is a stranger, whose purpose and intention are unknown, affords neither reason nor justification for holding him to be a transient. The city, no less than the country, is open to the enterprise of every man who believes it affords him opportunity to carry on a lawful business; and, if he establishes himself therein with the intent there to remain and build up and carry on such business, he is entitled to do so on equal terms with others who are already there. Whether a dealer or merchant is to be classed as a transient depends entirely upon the intention with which his business is established and carried on, and that intention is a fact to which he may testify, if such fact becomes a matter of judicial inquiry. Where the liability of a party depends upon the intent with which the act was done, and not upon the act, independent of the intention, he may testify to what his intention in fact was. *Goodfellow v. Riggs,* 88 Iowa 540; *Union S. Y. Bank v. Coffman,* 101 Iowa 594; *Counselman v. Reichart,* 103 Iowa 430; *Zimmerman v. Brannon,* 103 Iowa 144; *Harrison v. McKim,* 18 Iowa 485; *City Nat. Bank v. Jordan,* 139 Iowa 499; *Larson v. Thoma,* 143 Iowa 338; *Learned v. Ryder,* 61 Barb. (N. Y.) 552; 1 Wigmore on Evidence, Section 581. See, also, precedents collected in note to *Jarrell v. Young,* (Md.) 23 L. R. A. (N. S.) 367, 373, and in 7 Encyc. of Evidence, page 596. Indeed, this has been the practically uni-

versal holding of all courts, ever since the abandonment of
the rule by which the interest of a witness disqualified
him to testify. The question as it arises in this case is,
in its nature and effect, quite like that which must be con-
sidered where inquiry is to be made concerning a person's
legal residence. In cases of that kind, the conclusion to be
reached is peculiarly dependent upon proof of the per-
son's intention; and we think no case can be found where
it is held that such person is incompetent to testify to the
intent with which he changed his home or place of busi-
ness, or made a settlement in any given location.

The trial court, therefore, erred in ruling out defend-
ant's testimony with reference to the purpose and inten-
tion with which he went to Cedar Rapids and took charge
of the business, and with reference to his purpose to con-
tinue the business there. It was also error to admit the
testimony of the prosecuting attorney concerning what
he learned or heard from others in Waterloo or Sioux City
in regard to the business history of C. F. Adams & Com-
pany in those towns, as well as to admit the testimony
of a merchant witness comparing the defendant's cata-
logued prices with the market value of like goods sold by
other dealers, and very especially, to admit such testimony
by witnesses who admittedly knew nothing of the values,
except what they had recently been told by others.

It is quite difficult to understand upon what theory
testimony was offered or admitted, to show that defend-
ant sold his goods at higher prices than the merchants of
the city who had been longer established in business. Had
it appeared that he was selling at prices which were ma-
terially below the market value of the goods, it might, per-
haps, justify a suspicion that his location in the city was
not intended to be permanent, and that he was pushing the
sale of the stock, preparatory to an early closing out; but
no such inference can fairly be drawn from the fact that

he did not undertake to undersell other merchants, handling similar lines of merchandise. Nor is it a very material consideration that, in doing this business, defendant represented a mercantile firm having its home and headquarters in another state. It is a matter of common knowledge that the "chain store" system is a very large and important factor in the retailing of merchandise. It is by no means uncommon for a single great merchant or corporation to establish branch stores in nearly every city and town of considerable size throughout the land, and to enter into very active competition with other merchants in their several lines; but, so far as we are aware, no court has undertaken to hold it competent for the municipality to put them under the ban or handicap of a license not required from merchants generally. The usual justification offered for the imposition of a license upon transient merchants is to insure proper contribution from such merchants for police protection, and to protect local dealers against unfair competition by transient dealers who come and go so quickly as to escape their share of general taxation in the community; and it may be admitted that the reasons so advanced are sound, and that reasonable license fees so exacted can well be upheld. But the burden was on the prosecution to offer proof reasonably tending to show that defendant was, in fact, a transient merchant; or, in other words, that he, or Adams & Company, which he represented, had established the business in Cedar Rapids for temporary purposes only. There is no presumption that such was the defendant's intent, and we look through the record in vain to find proof of any circumstance necessarily tending to establish it. No witness for the prosecution testified, and none could testify, to such intent; and the defendant, the only person having knowledge of the truth in that respect, was denied the right to tell it to the jury. Upon the showing made for the city, it was probably not

necessary for defendant to offer any testimony in his own behalf; but if the trial court thought otherwise, and proposed to send the case to the jury, defendant was, as we have already said, competent to testify to the fact as he claimed it to be.

We do not, at this time, pass upon the appellant's contention as to the validity of the ordinance with violation of which he is charged. The other exceptions which we have considered are sufficient for the disposition of the appeal, and it is more than likely that, upon the retrial, no occasion will arise for entering upon any question of constitutional rights or limitations.

For the reasons we have stated, the judgment below is reversed, and a new trial ordered.—*Reversed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.