MATHISON, SHERIFF, *v.* BRISTER.

(Division B. Jan. 16, 1933. Suggestion of Error overruled Feb. 27, 1933.)

[145 So. 358. No. 30422.]

68

**W. W. Pierce**, Assistant Attorney-General, for appellant.

Hannah & Simrall, of Hattiesburg, for appellee.

**Ethridge, P. J.,** delivered the opinion of the court.

The appellee, Leon Brister, a resident citizen of Jefferson Davis county, Miss., is the driver of a gasoline truck, and the appellant, W. H. Mathison, is the sheriff and tax collector of Jefferson Davis county. Appellee is employed on a monthly basis to drive a gasoline truck for one P. C. Westfall, and starts out each morning from Prentiss, Miss., to call at various places to ascertain the quantity of gasoline that is desired by such places, and to draw the gasoline from a tank on his truck, and deliver same to the dealers, the filling stations. For his services he is paid seventy-five dollars a month. The performance of his duties required him to go into the counties of Lawrence, Copiah, Simpson, Covington and Lamar, in addition to Jefferson Davis county. The bill further shows that the business in which the appellee is engaged is an honorable, worthy, and useful business or occupation, and not one that is looked upon with dis-

favor in the law, or one that requires any particular regulation. It further charges that the appellee is not, in reality, a transient vendor of merchandise, in that he does not own any part or parcel of the merchandise which he transports and delivers, but that he is engaged solely and only for the purpose of driving a motor truck by his employer, Westfall, and goes from one gasoline station to another; the owners of said filling stations being obligated and bound to handle the gasoline sold and delivered by the employer of said appellee. The bill not only attempts to show that the appellee is not a transient vendor or dealer within the purview of the said act, but goes into detail to point out that if the said appellee falls within the purview of the said act, the said act is arbitrary, discriminatory, unconstitutional, and null and void, because it violates not only the fundamental and inherent rights of the appellee, but is also violative of the Constitutions of the state of Mississippi, and of the United States. The bill further charges that said act is unconstitutional and void, because it is destructive of the right of the appellee to perform his daily work and earn his daily bread, because of the unreasonableness of the amount of said tax; and that if he is compelled to pay the tax in said several counties, he will also have to pay municipal taxes in a number of cities, and that it will be impossible for him to so do and pursue his occupation.

The state demurred to the bill of complaint, which was overruled, and the state declining to plead further, a final order was entered granting an injunction against the sheriff from collecting a privilege tax from Brister.

The act involves chapter 89, Laws of 1932, being part of the privilege tax chapter, as follows: "Upon each natural person, doing business as a transient vendor, or dealer, as defined in this section, and upon which a privilege is not specifically imposed by another section of this act, a state tax, for each county, according to the following schedules: . . . (f) Upon each transient

vendor, or dealer of gasoline, kerosene, lubricating oil, and/or other petroleum products......$25.00.'' Section 216.

A transient vendor or dealer is defined in the same section as follows: ''When used in this section, the words 'transient vendor or dealer' shall be held to include any person or persons who shall be embraced in any of the following classifications: 1. All persons commonly and, generally termed 'peddlers,' and falling within the usual and commonly understood definition of 'peddlers.' 2. All persons acting for themselves or as an agent, employee, salesman, or in any capacity for another, whether as owner, bailee, or other custodian of goods, wares, and merchandise and going from person to person, dealer to dealer, house to house, or place to place, and selling or offering to sell at retail or wholesale, goods, wares and merchandise, or . . . 8. All persons who have in their possession, or under their control, any tangible property offered, or to be offered, for sale, or to be delivered, unless the sale or delivery thereof is to be made in pursuance of a bona fide order for the goods to be sold or delivered, said order to be evidenced by an invoice or memorandum.''

The act defines an order as follows: ''An order is defined as being an agreement in writing, between the seller to deliver and the buyer to accept the merchandise to be sold, bought, and/or delivered at the prices and in the quantities agreed upon; and said order shall be evidenced by a memorandum or invoice, accompanying the goods on the day on which the same are to be delivered, specifically designating and specifying the name and address of the seller and the buyer, the items purchased, sold, and to be delivered, and the price of each and the aggregate thereof. The agreement to buy, or accept for delivery, must be entered into before the goods are placed in transit, or delivered, and must be transmitted from the place at which taken to the regular and fixed place of business, before being filled and the goods delivered.''

The act also requires, as a condition precedent to obtaining a license under this section, that the applicant give bond to the sheriff and tax collector of the county in which he is domiciled, or of one of the counties in Mississippi in which he engages in business as a transient vendor; said bond to be in the sum of $500 with good and sufficient sureties, and conditioned to guarantee payment of all taxes required of him by the state or municipalities in which he does, or expects to do, business, and that the articles of merchandise which he sells or expects to sell shall be represented by him.

The first contention is that the act does not apply to the appellee, Brister, under the facts stated above.

We think it clear that the appellee, upon the allegations of the bill, was subject to the tax imposed by the act. It is not alleged, anywhere in the bill, that he complied with the act, or that his employer complied with it for him by taking out a license and by having the name printed upon the vehicle with the address of the owner as required by the act.

In Temple v. Sumner, 51 Miss. 13, 24 Am. Rep. 615, this court held that: ''The license tax imposed by this and the following sections is a personal privilege, conferring authority upon the individual actually selling the goods. It is the occupation that is taxed and not the goods, and it is incumbent upon him who engages in the business, whether he be agent or owner to take out the license. The statute contemplates in its policy both the raising of a revenue and protection to resident traders.'' In the course of the opinion the court said that: ''The statute has a twofold purpose, one is revenue, the other is to protect the resident merchant and trade. If the construction contended for by the plaintiff should be adopted, the door would be opened wide to defeat the policy of the law. Mr. Sumner need only take out license for himself, and under it, put a half dozen canvassers in the field to operate under it in the sale of his

wares. Leatherwood is the person who ought to have taken out the license, and who incurred the penalty deannounced in section 1739 of the code, and not Sumner.''

It is contended that the statute is not applicable, and that the appellee is not subject to the tax as a transient vendor or dealer, because he is not interested in the profits derived from the sale of gasoline and lubricating oil, and does not own same, or have any interest therein, working for a monthly salary as he does.

The act, in defining who is a transient vendor, specially embraces an employee who is to carry on the business taxed. It is immaterial whether Brister owned the commodities which he was selling. The state has the right to tax one who actually sells regardless of who owns the property so sold. The Legislature was not content to rest the tax upon the transient vendor or peddler as ordinarily defined by the dictionary. The Legislature has the power to define for itself. It may upset the dictionary and give to any word a meaning of its own. As said in the case of Ex parte Wilson, 8 Mackey (19 D. C.) 341, 12 L. R. A. 624: ''But when the Legislature saw fit to declare that a person who commits certain enumerated acts shall be considered a peddler and treated as such, it is too late to resort to lexicographers to ascertain whether the Legislature observed the dictionary definition of the occupation, according to antecedent usage or strict etymological rules. The legislative definition outweighs the dictum of the lexicographers.'' See, also, 29 C. J., 223.

In 21 R. C. L., p. 203, title ''peddlers,'' section 21, it is said that: ''It is clear that an agent may be a peddler while selling the goods of his principal, even if he is compensated by salary rather than by commission on his sales. The person making the actual canvass, sale and delivery is the peddler, and any active assistant who accompanies him is a peddler likewise. It would seem clear then, that either, or any of those who actually canvass,

sell or deliver, or who actually assist in such without having a license, as prescribed by statute, would be liable for the penalty under the statute.''

It is claimed, however, that if the statute is applied to the appellee, under the facts stated in the bill, it would be unconstitutional because it would be an unreasonable burden imposed upon a useful and lawful calling.

The test of reasonableness of a statute is not to be made by its application alone to an individual, or to a particular community. It must be considered with reference to the condition of the state as a whole, and it must be so clearly unreasonable as to deprive people of the class involved of the right of such lawful occupations. There is no allegation in the bill that would be sufficient to sustain this contention.

There is some authority to the effect that where a statute is a mere police regulation, it may be construed as unreasonable, if the license is excessive. A privilege tax, however, is not entirely a police regulation, although it may be founded in the police power of the state. It may also be founded in the taxing power of the state, and the state's limits of taxation are measured by its needs, unless there is constitutional limitation thereon.

In Coca-Cola Co. v. Skillman, 91 Miss. 677, 44 So. 985, 986, it was said that: ''The imposition of this tax may be both for revenue purposes, and for the purpose of discouraging the sale of the articles mentioned in the section; but this is no reason for any interference of the court with the legislative discretion, and in so acting the Legislature violated no section of the Constitution of the state, or of the United States. It may be that this tax is both a privilege tax and intended as a police regulation, as well as a tax for revenue. We cannot fathom the variety of objects which the Legislature may have had in the enactment of this law; but we conclusively presume that their objects were good, and that the im-

position of this tax upon this class of drinks was for a laudable purpose.''

In an earlier case under the Fourteenth Amendment, Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 S. Ct. 533, 535, 33 L. Ed. 892, the court, in dealing with the power of taxation and classification of property, on page 535 of the Supreme Court Reporter, said: ''The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution.''

There are numerous other authorities in the federal courts upon the same proposition, cited under section 16, title ''taxes,'' United States Supreme Court Digest, Volume 8, page 5910. See, also, Clarksdale Ins. Agency v. Cole, 87 Miss. 637, 40 So. 228; Vicksburg Bank v. Worrell, 67 Miss. 47, 7 So. 219; Holberg v. Town of Macon, 55 Miss. 112; State v. Widman, 112 Miss. 1, 72 So. 782; Israels v. State, 157 Miss. 143, 127 So. 279, and Pryor v. State, 162 Miss. 602, 139 So. 850.

We are therefore of the opinion that the statute does not violate either the State or the Federal Constitution, and is not unconstitutional when applied to the appellee.

The judgment of the court below, therefore, will be reversed, the demurrer sustained, and the cause remanded, without prejudice to the right to file an amended bill if the appellee so desires.

Reversed and remanded.