157 So. 206

## AMERICAN BAKERIES CO. v. CITY OF OPELIKA.
### 5 Div. 181.

Supreme Court of Alabama.
Oct. 11, 1934.

Rehearing Denied Nov. 8, 1934.

White E. Gibson, M. Leigh Harrison, and White E. Gibson, Jr., all of Birmingham, and Samford & Samford, of Opelika, for appellant.

390

E. Herndon Glenn, of Opelika, for appellee.

GARDNER, Justice.

On December 20, 1932, the city of Opelika, in adopting a license code, and providing a schedule of licenses for certain trades, businesses, occupations, and professions for the year beginning January 1, 1933, and ending December 31, 1933, provided as follows:

"8. Bakeries—For each person, firm or corporation engaged in the business of operating a bakery, 12 months only—$25.00.

"9. Bakeries—or agents of bakeries or distributors of bread who do not bake in Opelika and who sell to merchants or at wholesale, 12 months only $75.00."

Plaintiff, American Bakeries Company, is a Georgia corporation, but is duly qualified to do business in this state, and has been so engaged for more than ten years, with manufacturing plants both in Birmingham and Gadsden of this state, as well also in Atlanta, Ga. It is engaged exclusively in the business of manufacturing bakery products which it sells at wholesale to retail dealers, and not directly to the consumer.

The corporation (to so designate plaintiff for convenience) has in Opelika no bakery, but an agent who sells and delivers its bread, sent direct from Atlanta, to merchants of that city, and collects therefor, the agent working both on a salary and a commission basis. The sales by the agent were not confined to regular merchant customers, but he sold to "any merchant who wants to buy." The bread is first brought to his home and there stored until he is ready to carry it in the truck to sell and deliver to merchants. As to regular customers, they take the quantity desired, but with no previous agreement therefor. The agent uses a truck of the corporation, but if necessary at times uses his own car, or one rented. His deliveries and sales are not confined to Opelika, but he travels outside territory of some fifty or sixty miles.

The city demanded of the corporation the license fee of $75, under the provisions of schedule 9, above set out, which was on February 14, 1933, paid under protest, and on March 3, 1933, formal demand for a refund was filed with the city clerk. On March 13, 1933, the corporation made application to the mayor and city council of Opelika for a refund of said license, which demand was refused. The demand by the corporation for a refund was based upon the contention that the above-noted ordinance schedule was unconstitutional and invalid because of an arbitrary distinction between persons engaged in the same business, rested as it was upon the sole matter of location of the bakery, and the following among other authorities are cited: Bethlehem Motors Corporation v. Flynt, 256 U. S. 421, 41 S. Ct. 571, 65 L. Ed. 1029; Chalker v. Birmingham & Northwestern R. Co., 249 U. S. 522,

39 S. Ct. 366, 63 L. Ed. 748; Ward Baking Co. v. City of Fernandina (D. C.) 29 F.(2d) 789; Simrall v. City of Covington, 90 Ky. 444, 14 S. W. 369, 9 L. R. A. 556, 29 Am. St. Rep. 398.

The attorney for the city seems to concede the point is well taken, and on the day the corporation made application to the city council for the refund (March 13, 1933), another ordinance was adopted, which reads as follows:

, "An Ordinance.

"Be it ordained by the city council of the City of Opelika, as follows:

"1. That for each itinerant dealer or trader in bread, commonly known as loaf bread or light bread, in the City of Opelika, or within the police jurisdiction thereof, there shall be levied and collected an annual license tax of seventy-five ($75.00) Dollars, and such license tax shall be paid before such itinerant dealer or trader shall be permitted to make any sales.

"2. That for such itinerant dealer or trader in potato chips, peanuts, cakes, candies and confections, in the City of Opelika or within the police jurisdiction thereof, there shall be levied and collected an annual license tax of ten and 50/100 $10.50 dollars, and such license tax shall be paid before such itinerant dealer or trader shall be permitted to make any sales.

"3. Any person, firm or corporation violating this ordinance shall be subject to a fine of not more than five hundred ($500.00) dollars, in addition to being required to pay such license and each sale shall be considered a separate offense.

"Approved March 13, 1933

"Adopted March 13, 1933.

> "H. K. Dickinson, Mayor,
> "W. S. Harris, Clerk." ·

■ We think it clear that this ordinance was intended as a substitute for that part of the schedule in the previous ordinance to which plaintiff had interposed objection, and thus effected its repeal by implication. 43 C. J. 564; Barton v. Incorporation of Gadsden, 79 Ala. 495.

■ The validity of this latter ordinance (March 13, 1933) does not appear to be seriously questioned. It is well settled that a schedule of licenses may be prescribed for an itinerant person, firm, or corporation different from that prescribed for one having an established place of business within the municipality. 37 C. J. 227, 228; State v. Cater, 184 Iowa, 667, 169 N. W. 43, 46; Levy v. State, 161 Ind. 251, 68 N. E. 172; Mathison v. Bris-

ter, 166 Miss. 67, 145 So. 358; State v. Harrington, 68 Vt. 622, 35 A. 515, 34 L. R. A. 100; Dozier v. State, 154 Ala. 83, 46 So. 9, 129 Am. St. Rep. 51.

Discussing such license, the Iowa court in State v. Cater, supra, said: "The usual justification offered for the imposition of a license upon transient merchants is to insure proper contribution from such merchants for police protection and to protect local dealers against unfair competition by transient dealers who come and go so quickly as to escape their share of general taxation in the community, and it may be admitted that the reasons so advanced are sound and that reasonable license fees so exacted can well be upheld."

It was doubtless such motives that actuated the council in passing this last-noted ordinance. Plaintiff had no place of business in Opelika. It paid no license, nor did its agent. The agent puts the bread in the truck and sells it, as he testifies, to "any merchant who wants to buy it. I will sell it to any authorized licensed cafe or merchant. I ask if they have a license, and I sell it to them. I collect the money for the bread myself, sell it myself and deliver it myself. * * * When I ask a man if he is a licensed merchant I just take his word for it. When bread is delivered to me by The American Bakeries Company, I store it in my home until it is delivered to merchants. These deliveries are made to me every day from the American Bakeries Company in Atlanta. * * * I do not pay a license to the City." It was manifestly in answer to this situation and the application for a refund of the license under the ordinance of December, 1932, that the ordinance of March 13th was passed.

■ But counsel for plaintiff present a most ingenuous argument for a refund, even under the ordinance of March 13th, based upon the theory that plaintiff does not come within its terms. It is insisted that the license is prescribed for "each itinerant dealer or trader in bread," and that plaintiff is neither a dealer nor trader in bread, but a manufacturer. We are cited to authorities holding that a dealer or trader is not one who buys to keep, or makes to sell, but one who buys to sell again, and that such is the common acceptance of the meaning of these words. 17 C. J. 1154; 63 C. J. 597, 598; Norris Bros. v. Commonwealth, 27 Pa. 494; Egan v. State (Tex. Cr. App.) 68 S. W. 273; State v. Chadbourn, 80 N. C. 479, 30 Am. Rep. 94; City of Ozark v. Hammond, 329 Mo. 1118, 49 S.W.(2d) 129; Levy v. State, 161 Ind. 251, 68 N. E. 172;

Bouvier's Law Dict.; City of Aurora v. Stafford, 227 Mo. App. 322, 51 S.W.(2d) 547; City of Newport v. French, Bros. Bauer Co., 169 Ky. 174, 183 S. W. 532, 537.

But we need not stop to minutely inquire into these authorities discussed in brief of counsel, and which have been read and considered. For the purposes of this case, the general acceptation of the meaning of these words may be conceded as urged by counsel, though none of the cited cases appear here directly in point. That of City of Ozark v. Hammond, supra, is to the effect that a baker is a manufacturer, and not a merchant, and distinguishes between the two.

But in the interpretation of the bankrupt law it was held in Re Cocks, 5 Fed. Cas. No. 2,933, page 1154, that a baker who buys flour and makes it into bread and sells the bread to daily customers is a tradesman, and this case has been cited with approval in Re San Gabriel Sanatorium Co. (D. C.) 95 F. 271, and Re Minn. & Ariz. Const. Co., 7 Ariz. 137, 60 P. 881. See, also, 63 C. J. 600.

And in 17 C. J. 1155 is the observation that in a more comprehensive sense the word "dealer" sometimes applies to one who acquires, possesses, handles, and sells a commodity, whether he has bought it to sell again or not. And, in Norris Bros. v. Commonwealth, supra, the Pennsylvania court refers to the case of Berks County v. Bertolet, 13 Pa. (1 Harris) 522, where the holding was that a miller who sold the flour was a dealer in merchandise.

■■■ Whatever may be said, therefore, as to the common acceptation of the word "dealer," standing alone, yet it is clear that in a broad and more comprehensive sense one who bakes bread and sells it is dealing and trading in it in a broad sense, and may be said to be a dealer therein according to the context. Rules governing in the construction of state statutes are likewise applicable to municipal ordinances. 43 C. J. 569. And it is generally recognized that words in a statute are to be given their commonly understood meaning, yet if it is plain that a different meaning was intended, effect must be given the legislative intent, and words are to be interpreted with due regard to the subject-matter of the statute and its purpose. 59 C. J. 977, 978.

Such was the holding of this court in Favers v. Glass, 22 Ala. 621, 58 Am. Dec. 272, as expressed in the first headnote, as follows:

"In the construction of statutes, a word which has two significations should, ordinarily, receive that meaning which is generally given to it in the community; but when this construction would contravene the manifest intention of the legislature, we must depart from this rule, and give effect to the intention."

■ And as further applicable to the instant case the following rule of construction as expressed in the first headnote of Southern Express Co. v. I. Brickman & Co., 187 Ala. 637, 65 So. 954:

"To arrive at the real meaning of a statute the courts should consider the prior law, the mischief or defect for which it had not provided, the remedy appointed by the legislature, the reason for such remedy, and the external historical facts which led to its enactment, and the statute will be so construed as to affect the purpose for which it was intended."

■ Following in the wake of these rules for construction of the ordinance here in question, we think it clear the words "dealer" or "trader" were used in their broadest sense. It is manifest from the very history of the ordinance that it was enacted to meet the situation with which the city was then confronted by its experience with plaintiff corporation. Its effort to fix a different tax had failed, and on the very day plaintiff made application to the mayor and councilmen of the city for a refund, this latter ordinance was adopted, and presumably, of course, the city authorities were well aware of all the surrounding facts and circumstances. 59 C. J. 1008, 1109. The legislative purpose (to so speak of the action of the city council) was plain.

Plaintiff's agent was selling and delivering its bread in the city to any merchant who would buy, and collecting therefor. Neither plaintiff nor its agent had any place of business in the city, and paid nothing by way of license or tax. The local baker was required to pay, and the effort to fix a different and higher license on plaintiff had proved abortive. With plaintiff's bread being thus sold and delivered in the city, the councilmen used the words "dealer" or "trader" in their most comprehensive sense, and to give them a more restrictive meaning would but serve to nullify the very evident intent of the city's law-making body. Of course, these words could have been so defined in the ordinance, in relation to plaintiff's status, as to leave no room for doubt (Mathison v. Brister, 166 Miss. 67, 145 So. [Miss.] 358), but we conclude that its history and all attendant circumstances speak with equal clearness and sufficiently disclose the legislative intent and meaning of the language used.

While the argument for plaintiff is ingenuous and forcibly presented, yet under the

broader view, which we think should prevail, it is not sufficiently persuasive.

We are, therefore, of the opinion the ruling of the trial court presents no error to reverse, and the judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.