# Western Railway of Alabama *v.* Capital Brewing & Ice Co.

*Mandamus.*

(Decided May 30, 1912. 59 South. 52.)

*Intoxicating Liquors; Transportation; Regulation.*—Acts 1909, p. 8, and Acts 1909, p. 86, were in force when the Acts of 1911, p. 26, and Acts 1911, p. 249, were passed, and the latter Acts are not in conflict with the former Acts, and hence, the fact that liquors might be lawfully manufactured and sold in one town did not authorize their transportation by a carrier to a county which had not voted on the question of sale, and in which the sale was therefore prohibited.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Mandamus by the Capital Brewing & Ice Company to compel the Western Railway of Alabama to accept and transport as freight beer from the city of Montgomery

to the city of Opelika, in Lee county, Ala., both of which cities were on appellant's line of railway. From a decree granting the mandamus as prayed, respondents appeal. Reversed and rendered.

The petition alleges in effect that petitioner is engaged in the manufacture of ice, beer, and other articles, and that it has obtained and paid license as a manufacturer of malt liquors, and that it manufactured and sold such liquors, with its principal place of business in the city of Montgomery, which is located in Montgomery county, a county in which the manufacture, sale, and other disposition of spirituous, vinous, or malt liquors is permitted and authorized by law. It is then alleged that the Western Railway of Alabama is a public service corporation having a line of railroad running between Montgomery and the city of Opelika, in Lee county, Alabama, and that complainant has tendered to it for transportation as freight from Montgomery to Opelika beer in various packages to be transported for hire to Opelika, and has offered and tendered the freight charges thereon; but said corporation refuses to receive and transport the same, alleging as its excuse therefor the fact that the sale or other disposition of spirituous, vinous, or malt liquors is prohibited in Lee county, Ala., in which county the city of Opelika is situated. The demurrers to the petition raise the questions decided in the opinion.

STEINER, CRUM & WEIL, for appellant. Under the Fuller Bill, a common carrier has no right to transport liquors into a prohibited county.—Acts 1909, p. 87. This act was not repealed, nor is it in conflict with the Parks Bill (Acts 1911, p. 26) nor with the Smith Bill (Acts 1911, p. 349) and hence, the Fuller Bill was not repealed by said Act, and the railroad company could not

transport liquor from Montgomery county, where it was lawful to manufacture and sell the liquor into a county that had had no election, and therefore, was a prohibition district.

COLEMAN, DENT & WEIL, for appellee. The validity of the Parks and Smith Bills has been determined by this court, in the case of *State ex rel. Crumpton v. Montgomery, infra;* 59 South. 294. This being true, the sections of the Fuller Bill referred to are not applicable as there is no such thing in Montgomery county as prohibited liquors and beverages, Montgomery county having voted to license the manufacture and sale of spirituous, vinous and malt liquors. The statutes are inconsistent with each other, and the latter abrogates the former.— *Edson v. State,* 134 Ala. 50; *Iverson v. State,* 52 Ala. 170; 102 Mass. 386; 2 Gray 208.

SIMPSON, J.—As stated by the appellee in its brief: "The sole question presented by this appeal is whether or not the present laws of Alabama prohibit the shipment of beer from Montgomery county, a county which has voted for the legalized sale of liquors, by private dealers under a license, to Lee county, a county which has not yet voted upon this question."

On August 9, 1909, was approved the "Act to promote temperance," etc., the first section of which defines what "prohibited liquors and beverages" means, and the third section of which prohibits the sale, manufacture, etc., "of the prohibited liquors and beverages described in section 1."—Acts Sp. Sess. 1909, p. 8.

On August 25, 1909, was approved the act "to further suppress the evils of intemperance," etc., which, among other prohibitions, provides, in its twenty-fourth section, that "it shall be unlawful for any person, firm, cor-

poration or association, whether a common carrier or not, to accept from another for shipment, transportation or delivery, or to ship, transport or deliver, for another, said prohibited liquors or beverages, or any of them, when received at one point, place or locality in this state, or to convey or transport over, along any public street or highway any of such prohibited liquors for another" and goes on to provide penalties.—Acts 1909 (Sp. Sess.) pp. 63, 86. The first section of this act prohibits the letting of premises for the illegal sale, etc., of "spirituous, vinous or malt liquors or any other liquors, liquids or beverages prohibited by the laws of Alabama," etc., and the subsequent sections refer to them as "any prohibited liquors or beverages."

On February 21, 1911, was approved "An act to submit to the qualified electors of each of the counties in this state the question of whether or not the manufacture and sale of spirituous, vinous or malt liquors shall be legalized therein, and whether or not such liquors shall be sold by dispensaries or by private dealers under a license."—Acts 1911, p. 26. This act provides for a petition and the holding of an election, and section 11 provides "that if a majority of the legal votes cast in said election shall be for legalizing the manufacture and sale of said liquors, and if a majority of the votes cast upon the issue as to whether the sale so authorized shall be by dispensary, or by private dealers under license, be in favor of sale by private dealers under license, then the manufacture and sale of spirituous, vinous and malt liquors in said county shall be authorized and shall be licensed, regulating, governing and controlled as shall be provided by law."

On April 6, 1911, was approved "An act to regulate the manufacture, sale and other disposition of spirituous, vinous and malt liquors in the incorporated cities

and towns, in the state of Alabama, whenever such manufacture, sale or other disposition is authorized at and by an election of the qualified electors of the county," etc.—Acts 1911, p. 249.    This act provides the conditions, restrictions, and regulations under which said liquors shall be sold, after being allowed by elections.

The appellee contends that the effect of the act of 1911 is that the manufacture, sale, etc., of liquors is no longer "prohibited" in Alabama, and that the Parks bill and the Smith bill authorize and legalize the sale, etc., of the same, and that therefore, when the beer was tendered to the appellant and its transportation demanded, it was not "prohibited liquor," within the meaning of that act.    This position is not tenable.    The recital of the act shows, first, what "prohibited liquors" means; second, that the sale of them is still unlawful under the general laws of Alabama, and the later acts are based upon the fact that this is the general law and policy of the state of Alabama, and provide merely that the sale, etc., of the same may be legalized in the towns and cities of the state, by a vote of the people.    As to all other places, and as to all other parts of said acts not authorized to be changed by the vote of the people, the law necessarily remains just as it was before.

As will be seen, the only matter submitted to the electors under the act of February 21, 1911, is "whether or not the *manufacture and sale* of spirituous, vinous or malt liquors shall be legalized *therein*"—that is, in said county; and the only result of said election is that "the *manufacture* and *sale* of spirituous, vinous and malt liquors, in said county," shall be authorized.    It is just as if a special act had been passed authorizing the manufacture and sale of said liquors within one county.    The act makes no provision for authorizing the receiving, shipping, or carrying of such goods by carriers.    Hence

[Western Railway of Alabama v. Capital Brewing & Ice Co.]

the general law upon that subject must stand, just as if the later acts had not been passed.

It is doubtless true that if the provisions of a later act be inconsistent with a former act, so that both cannot stand together, the later act operates as a repeal of the former; but that is not the case in this instance. The right to manufacture and sell liquors in a certain locality does not carry with it the right to carry those goods to another locality where the sale is prohibited by law. In fact, the whole spirit of the local option laws is that each locality shall have the right to regulate its own affairs on this subject.

As to whether or not the effect of the law is that a common carrier would be liable for carrying the prohibited liquors through a prohibition county to another in which the sale is legalized, we need not decide, as that question is not before us. Whether that would be a hardship or not we need not consider, as our province is merely to construe and interpret the laws as they are written on our statute books, leaving the Legislature to supply any omissions.

The act of 1911 does not repeal the provision of the previous law, prohibiting carriers to receive and transport said prohibited liquors. The court erred in granting the writ of mandamus, "compelling the said defendant, the Western Railway of Alabama, to accept from petitioner" the goods in question.

The judgment of the court is reversed, and a judgment will be here rendered denying said writ.

Reversed and rendered. All the Justices concur.