# Southern Express Co. *v.* I. Brickman & Co.

## *Mandamus.*

### (Decided June 18, 21914.   65 South. 954.)

1. *Statutes; Construction; Extrinsic Evidence.*—To arrive at the real meaning of a statute the courts should consider the prior law, the mischief or defect. for which it had not provided, the remedy appointed by the legislature, the reason for such remedy, and the external historical facts which led to its enactment, and the statute will be so construed as to affect the purpose for which it was intended.

2. *Intoxicating Liquors; Shipment; Statutes.*—The Parks Bill and Smith Bill, although not repealing the prohibition of the Fuller Bill by express terms, impliedly repealed the latter act as to shipments between two cities in each of which the sale of liquor is legalized, whether the consignee be a liquor dealer or not.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Petition by I. Brickman & Company, for mandamus to compel the Southern Express Company, a common carrier, to receive and transport a shipment of liquors to a party in another part of the state who was not a liquor dealer, but where it was lawful to sell liquor. From an order granting the petition respondent appeals. Affirmed.

JONES, FOSTER & FIELDS, for appellant. The court erred in overruling the fifth ground of demurrer assign-

ed.—*Wes. Ry. v. Capitol B. Co.,* 59 South. 52; *Hauser v. State,* 60 South. 549. The Parks and Smith Bills did not expressly repeal the Fuller and Carmichael Acts relative to shipments of liquor.

GOODWYN & MCINTYRE, for appellee. Troy was a territory in which liquor could be lawfully sold and hence, under the Smith and Parks bills, the common carrier was without right to refuse to transport liquor into that territory, as these bills impliedly repealed the anti-shipping clause of the Fuller bill.

DE GRAFFENRIED, J.—The only question which, in this case, we are called upon to determine, is whether or not the present laws of the state prohibit the shipment from the city of Montgomery, Ala., by a liquor dealer, doing business as such, in said city of Montgomery, in which the sale of intoxicating liquors has been legalized to a person not a liquor dealer at Troy, Ala.; the city of Troy being also a city in which the sale of intoxicating liquors has been legalized. The court below held that such a shipment could be legally made, and the Southern Express Company appeals.

1. It is conceded by counsel for appellant that a liquor dealer doing business as such in the city of Montgomery may, under our present laws, lawfully ship to a liquor dealer at Troy intoxicating liquors, but appellant claims that such a shipment cannot be lawfully made to a person at Troy who is not a liquor dealer at Troy. In other words, appellant concedes that a common carrier may lawfully transport intoxicating liquors from Montgomery to Troy, provided such liquors are shipped by a liquor dealer in Montgomery to a liquor dealer in Troy. On the other hand, it is claimed by appellant that a common carrier cannot transport intoxi-

cating liquors from Montgomery, Ala., to Troy, Ala., when such liquors are shipped by a liquor dealer in Montgomery to a person not shown to be a liquor dealer in Troy.

2. To arrive at the real meaning of a statute it is necessary to consider: "(1) What was the law before the act was passed; (2) what was the mischief or defect for which the law had not provided; (3) what remedy the Legislature has appointed; and (4) the reason of the remedy."—*Heydon's Case,* 3 Rep. 76; 10 Rep. 73A. Endlich on the Interpretation of Statutes. p. 35, § 27.

"If possible, a statute must be so construed as to make it effect the purpose for which it was intended. The interpreter to understand the subject-matter and the scope and object of the enactment must * * * call to his aid all those external and historical facts which are necessary for this purpose and which led to the enactment. He must refer to the history of the times to ascertain the reason for and the meaning of the provisions of a statute, and to the general state of opinion, public, judicial, and legislative, at the time of the enactment."—Endlich on the Interpretation of Statute, p. 37, § 29.

3. The legislative history of the state indicates that for many years our legislators have been actively engaged in considering and in attempting to suppress the evils which are attendant upon the sale and use as beverages, of intoxicating liquors. For many years the system of local option, with the county as the unit, prevailed, and during that period, whenever, through their legislators, the people of a county indicated that they desired the sale of intoxicating liquors to be prohibited in their county, an act was passed prohibiting the sale of intoxicating liquors in such county. During that period it was the legislative policy to protect the people resid-

ing in the territoy in which the sale of intoxicating liquors was prohibited by law from the untrammeled importation of such liquors into such territories.—Code 1896, § 5087.

This legislative policy was dictated by the desire, on the part of the Legislature, to prevent the illegal sale of intoxicating liquors in dry territory, and statutes passed pursuant to such policy were material aids in the hands of the people residing in such territory in their efforts to destroy the liquor traffic in such territory. This legislative policy did not, however, extend to the territory in which the sale of intoxicating liquors was legalized. Into that territory the importation of intoxicating liquor was not prohibited. The reason was that in such territory a citizen could, in his own town, buy the liquor that he wanted, and there was therefore no reason why he should be prohibited from buying the liquor in some town not his own and having it shipped to him at his home town. In such case there was no mischief to be remedied by prohibiting the importation of intoxicating liquor into such town, and legislation to that end would have been useless.

4. On August 9, 1909, the Legislature, by the act familiarly known as the "Carmichael Bill" (Acts Special Session 1909, p. 8), prohibited the sale of intoxicating liquors at any place in the state. As a companion to this act, the Legislature on August 25, 1909, by the act familiarly known as the "Fuller Bill" (Acts Special Session 1909, pp. 63-86), made it unlawful for intoxicating liquors except under certain conditions to be shipped from one point in the state to any other point in the state. The reason for this provision is apparent, and, so long as it was unlawful for intoxicating liquors to be sold at any point in the state, it was expedient, for the proper enforcement of that law, that intoxicat-

ing liquors should not be permitted to be shipped from one point in the state to another point in the state. To prevent the illegal sale of intoxicating liquors at any point in the state—to carry into effect the purpose of the act above referred to as the "Carmichael Bill" and which is entitled an act "to promote temperance and suppress the evils of intemperance, etc."—it was expedient that no intoxicating liquor, except under certain restrictions, should be permitted to be transported from one point in the state to any other point in the state.

5. In the early part of the year 1911, the Legislature by the act approved February 21, 1911 (Gen. Acts 1911, pp. 26-31), and known as the "Parks Bill," and its companion act approved April 6, 1911 (Gen. Acts 1911, pp. 249-288), and known as the "Smith Bill," departed from the system of state-wide prohibition and returned, under restrictions not theretofore existing at any time in the state, to the system of local option. The "Parks Bill" and "Smith Bill" are companions and complements of each other just as the "Carmichael" and "Fuller" Bills are companions and complements of each other. All four of these acts are now the law of this state and as such must be read and construed together. The provisions of the "Carmichael" and "Fuller" Bills—the first acts in point of time—must, of course, give way in so far as they are in conflict with the express and plainly implied provisions of the "Parks" and "Smith" Bills; but, where a provision of the "Carmichael" or "Fuller" Bill is not in conflict with an express or plainly implied provision of the "Parks" or "Smith" Bill, then the provision of the "Carmichael" or "Fuller" Bill must be held to apply.—*State, ex rel. Crumpton v. City of Montgomery*, 177 Ala. 212, 59 South. 294; *Western Railway Co. v. Capital Brew. Co.*, 177 Ala. 149, 59

South. 52; *Hauser v. State,* 6 Ala. App. 31, 60 South. 549.

6. The people of Pike county, taking advantage of the provisions of the "Parks" and "Smith" Bills, have in accordance with the law of the state, legalized the sale of intoxicating liquors in the city of Troy. A citizen of that city can buy all the intoxicating liquors that he wants from a liquor dealer in that city. At no period in the history of the state has its legislative policy indicated that it was thought to be conducive to soberness or to the suppression of the evils of intemperance to prohibit the importation of intoxicating liquors from a town in the state where intoxicating liquors were legally sold into another town or city where such liquors were actually being sold in accordance with the law. When, as already stated, the "Parks" and "Smith" Bills were enacted into law, the Legislature, under restrictions not theretofore existing, and without affecting the operation of the "Carmichael" and "Fuller" Bills, except where their operation infringes upon the legislative purpose, in adopting the "Parks" and "Smith" Bills, returned to the system of local option, which prior to the adoption of the "Carmichael" and "Fuller" Bills had prevailed in this state. During all the period that local option prevailed in the state, it was, as already stated, not thought to be conducive to public morality to prohibit intoxicating liquors to be shipped from what is commonly called one wet town into another wet town. Having returned to the system of local option, we can see no reason why we should hold that the general prohibition in the Fuller Bill against the shipment of intoxicating liquors from any point in Alabama to any other point in the state should now be held to apply to a shipment of such liquors from one wet town to another wet town. As to shipment from one wet town to

another wet town, the general provisions of the "Fuller" Bill must be held to give way to the plain purpose of the Legislature in enacting the "Parks" and "Smith" Bills.

Appellant admits that the provisions in the Fuller Bill prohibiting the transportation of intoxicating liquors from one point to another point in the state has, by implication, been repealed by the Parks and Smith Bills as to liquor dealers in wet towns and cities. The true reasoning upon which the implied repeal is admitted to exist as to liquor dealers in wet towns really forces the conclusion that, in truth, the repeal of the stated provision exists as to the citizens of the state who reside within the territory embraced within the corporate limits of wet towns.

The judgment of the trial court was in accordance with the above views. The judgment of the trial court is therefore affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.