42 So.2d 465

## MERRIWETHER v. STATE.

### 3 Div. 512.

Supreme Court of Alabama.
Oct. 13, 1949.

John W. Lapsley, of Selma, and Richard T. Rives, of Montgomery, for appellant.

A. A. Carmichael, Atty. Gen., and Hugh F. Culverhouse, Asst. Atty. Gen., for appellee.

LAWSON, Justice.

The ultimate question for decision presented by this appeal is whether sales tax is due the State of Alabama by appellant, a wholesale and retail dealer in automobile parts, equipment and supplies, on sales of such articles made by appellant during a period beginning March 1, 1942, and ending December 31, 1946, to regularly licensed retail automobile dealers, who were engaged in the business of reselling such articles, and who represented to appellant that the articles so purchased were to be resold by them, but were in fact used by the said retail automobile dealers in reconditioning their own used cars for sale at retail after being reconditioned.

On July 22, 1947, the State Department of Revenue entered a final assessment against appellant, Lee Merriwether, doing business as Genuine Auto Parts Company, for additional sales tax for the period of time above mentioned, in the amount of $1912.32, which amount includes interest and penalty.

Within thirty days from the date on which the said assessment was made and entered on the minutes of the Department of Revenue, appellant, the taxpayer, filed notice of an appeal with the secretary of the Department of Revenue and with the register of the circuit court of Montgomery County. At the time of taking the appeal, appellant executed a supersedeas bond, which was approved by the register of the circuit court of Montgomery County, in double the amount of the assessment, conditioned to pay all taxes, interest and costs found to be due. § 140, Title 51, Code 1940.

■ Thereafter on November 5, 1947, appellant filed a bill in equity in the circuit court of Montgomery County assailing the correctness and validity of the assessment of the Department of Revenue in so far as it was based on gross receipts of sales made by him in the manner described in the first paragraph of this opinion. The prayer of the bill was, in effect, that the court declare that no sales tax was due on the gross receipts of sales so made and that the court set aside and cancel the assessment made by the Department of Revenue and render a judgment or decree fixing the correct amount of additional sales tax, penalty and interest due by the taxpayer for the period covered by the assessment. This procedure is in accordance with the established practice. State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342.

■ Thereupon the State demurred to the bill which is the proper method in a case of this kind to raise an issue of law on the facts alleged. State v. Louis Pizitz Dry Goods Co., supra.

The trial court sustained the demurrer of the State and the taxpayer has appealed to this court.

Counsel for appellant, the taxpayer, refer to the bill filed in the circuit court of Montgomery County, in equity, as a petition and to appellant as petitioner. We will do likewise.

■■ The Alabama sales tax has been held to be a consumer's tax in the sense that the ultimate burden of the tax must be passed on to the consumer. King & Boozer v. State, 241 Ala. 557, 3 So.2d 572, and cases cited. However, as to taxable sales, the burden is upon the seller to collect from the purchaser the amount of tax due on a sale and the State looks to the seller for the tax. Doby et al. v. State Tax Commission, 234 Ala. 150, 174 So. 233, 237; Tanner v. State, 28 Ala.App. 568, 190 So. 292, certiorari denied, 238 Ala. 269, 190 So. 295. So, hereafter, when we speak of the liability of petitioner for sales tax we have reference to his obligation to collect from the purchaser and remit to the State on all taxable sales.

The petition, in substance, alleges that during the period of time covered by the assessment petitioner was engaged principally in the business of a wholesale dealer in automobile parts, equipment, supplies, paints, and other like materials, although he occasionally sold such articles at retail directly to the ultimate consumer; that petitioner's books were kept in such a manner as to show separately the sales made at wholesale and those made at retail and that petitioner separately reported the wholesale sales and retail sales and separately reported the amount of money derived from wholesale and retail sales.

But we are not concerned here with the manner in which petitioner kept his books. The petition affirmatively shows that petitioner failed to pay sales tax on gross receipts received by him during the period covered by the assessment from the sale of automobile parts, equipment, supplies, paints and other like materials to retail automobile dealers and which articles of merchandise were used by the said automobile dealers "in the business of rebuilding or reconditioning second-hand or used automotive vehicles for sale at retail, which said vehicles, after being so rebuilt or reconditioned, were in fact sold at retail."

So, the question here is, do the averments of the petition show, as against the demurrer interposed, that the petitioner was not liable for sales tax on such sales? If this is so, the trial court erred in sustaining the State's demurrer. If such is not the case, the demurrer was properly sustained.

The petition seeks to establish petitioner's nonliability for the tax on several grounds. We will deal with them separately but not in the order in which they appear in the petition.

■ It is averred in the petition, in substance, that the sales tax law was not intended to apply to sales of automobile parts, supplies, etc., to be used in reconditioning used automotive vehicles for sale at retail, in that the gross proceeds of the sale or sales of used automotive vehicles are expressly exempt from sales tax (subsec. p, § 755, Title 51, Code 1940), and that the legislature did not intend to deny to the sellers of used automotive vehicles the full benefit of such exemption by requiring them to pay a tax on parts, supplies, etc., purchased by them with which to recondition used automotive vehicles for resale.

In November, 1937, this court had before it for determination a case very similar to the instant case. It was a declaratory judgment proceeding instituted by G. W. Cody, doing business as the Cody Supply Company, against the State Tax Commission. Cody v. State Tax Commission, 235 Ala. 47, 177 So. 146.

. It was expressly held in that case that Cody and those in similar businesses are liable for the sales tax on automobile parts, tires, accessories, solder, paint and similar materials, sold to automobile repair shops *to be used, and which are in fact used,* by the repair shops in reconditioning their own second-hand automobiles for resale.

Petitioner in this case is in the same business as was Cody. The automobile dealers in this case are in the same position as were the operators of automobile repair shops in the Cody case, supra.

Petitioner is familiar with the holding in the Cody case, but insists that it is apparently in conflict with the case of Doby v. State Tax Commission, 234 Ala. 150, 174 So. 233. But we see no conflict in the holdings of those cases. The Doby case, supra, dealt with the liability of the repair shop operator for sales tax under certain circumstances, that is, his obligation to collect the tax from his customers and to remit to the State. The Cody case, supra, dealt with the obligation of the automobile supply house operator to collect the sales tax from the repair shop operator when he sold supplies to him and to remit to the State. Mr. Justice Foster, who wrote the opinion for the court in the Cody case, supra, pointed out this distinction in the following language: "The Doby case, supra, dealt with the liability of the operator of the shop. In it, the statement was clearly made that the liability for the tax payable by the seller to the operator of the shop was not involved nor decided. But that is now the purpose of this suit." 235 Ala. 49, 177 So. 148.

Petitioner contends that the opinion in the Cody case, supra, failed to take cognizance of the fact that the gross proceeds of the sale or sales of used automotive vehicles was expressly exempt from sales tax. It is true that at the time the Cody case was decided the sales tax law then in effect contained such an exemption. But it was not necessary to make reference thereto for it had no bearing on the question presented. Merely because the legislature saw fit to exempt from sales tax the gross proceeds received from the sale of used automotive vehicles, it does not follow that it intended to exempt the sale of materials, supplies and equipment purchased for the purpose of reconditioning such vehicles for resale. We cannot say that the legislature intended to single out either the seller or purchaser of used automotive vehicles as a favored class. Unquestionably, there was some good reason for the exemption granted on sales of used automotive vehicles, and we think it likely that the reason for the exemption was the fact that the legislature recognized that a sales tax is due on the sale of a new car and on the sales of parts, accessories, and supplies purchased and used for the purpose of reconditioning the car for resale.

■ There is no merit in petitioner's contention that if such sales by the automotive supply house to the automobile dealer are held to be taxable, it would in effect amount to taxing the same article twice, in

that, except for the exemption afforded to the sale of used automotive vehicles, a tax would be due on such sales. But there was such an exemption during the period covered by the assessment involved. We must deal with the law as it then existed.

Petitioner's next contention is that sales by a dealer in automotive supplies, accessories and equipment to retail automobile dealers to be used, and which are in fact used, in reconditioning used automotive vehicles for sale, are wholesale sales, in that such articles of merchandise thereby become ingredient or component parts of the automotive vehicle which is manufactured by the used car dealer.

It is true that the sales tax law undertakes to tax a retailer, not a wholesaler. Subsection (i) of § 752, Title 51, Code 1940, which was in effect during the period covered by the assessment here under consideration, reads as follows: "The term 'wholesale sale' or 'sale at wholesale' means a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale. The term 'wholesale sale' shall include a sale of tangible personal property or products (including iron ore) to a manufacturer or compounder which enters into and becomes an ingredient or component part of the tangible personal property or products which he manufactures or compounds for sale, and the furnished container and label thereof."

Petitioner contends that the holding in the Cody case, supra, is not controlling as to this point in that the opinion in that case gave no consideration to similar provisions in the sales tax law then in effect. Subsec. 1(h), Act No. 126, approved February 23, 1937, General Acts 1936–37, Special Session, p. 125.

Regardless of the fact that the opinion in the Cody case does not expressly deal with the question as to whether one who reconditions used cars for resale is a manufacturer, we are of the opinion that the conclusion reached in that case is correct. We are not willing to say that one who adds paint, parts and accessories to an automotive vehicle to make it more salable is a manufacturer of the car within the meaning of subsec. (i) of § 752, Title 51, Code 1940. Even if it be conceded that such articles did become ingredient or component parts of the reconditioned used automotive vehicle, it does not follow that the person or firm affixing such articles to the vehicle was a manufacturer of the vehicle.

Petitioner next insists that he was not liable for the tax on the sales here under consideration for the reason that although such sales may be taxable when the automotive supply house knows that the purchaser does not intend to resell the articles purchased, but intends to use them in rebuilding used automotive vehicles for sale, he had no such knowledge and therefore could not collect the tax from the purchaser.

As to this point, the petition alleges in substance that in not collecting the tax from the purchasers, the retail automobile dealers, the petitioner acted in good faith in relying upon the representations made to him by the purchasers that the automotive supplies, equipment, paint, solder, etc., were purchased for resale and that in view of such representations he was unable to determine what portion, if any, of the purchases would not be sold at retail, but instead would be used by the purchasers for reconditioning their own used automotive vehicles for resale.

In the Cody case, supra, which, as before indicated, was a declaratory judgment proceeding, we declined to answer in categorical form the following question: " '(c) Whether or not the complainant and those similarly situated with him in the automobile business as aforesaid [general automobile supply business] are liable for the 2% sales tax on automobile parts and accessories, as well as materials and supplies such as solder and paint, and other materials, sold by them to automobile repair shops *for resale* when, as a matter of fact, such products are not resold by said automobile repair shops, but are consumed by them in rendering service in and about repairing cars for their customers or in reconditioning their own second hand cars for resale.' " (Emphasis supplied.) 235 Ala. 49, 177 So. 147.

596

Question (c) in the Cody case, supra, differed from those questions in that case which were answered in that it involved the liability of the operators of such automotive supply houses for sales tax on sales of materials, supplies, etc., made by them to the repair shop operators for resale, but which articles were thereafter diverted to other uses, while those questions which were answered were so framed as to indicate that at the time of the sales the operators of the general automobile supply houses knew that the articles were not purchased for resale but to be used, and in fact were used, in either repairing automotive vehicles for their customers or for reconditioning their own used automotive vehicles for sale.

In refusing to answer question (c), supra, in the Cody case, it was said: "The answer to (c) cannot be given in categorical form, as requested. That depends upon the circumstances and conditions which we have endeavored to explain."

The circumstances and conditions referred to in the above quotation from the Cody case are set out in the opinion in that case, as follows:

"While the act defines a retailer and wholesaler as being dependent upon whether the purchaser is a user or consumer and acquires the property for use and consumption, or for resale, it sometimes occurs, as here manifested, that the dealer does not know what his customer will do with the goods; and that sometimes his customer disposes of the property for one or the other purpose indiscriminately, using some and selling some of the same stock. There would, of course, be no difficulty if the shopkeeper sold no parts as we have interpreted a sale in that connection, nor if he consumed no parts.

"While it may not be the duty of the dealer in selling to him to follow up the transaction to see to it that none of the goods are used or consumed, *it is his duty to know the general nature of the business conducted by the customer. He is bound to find out the nature of business conducted by him in respect to resales and consumption of goods of a similar sort.* If the customer operated a retail place only, and is engaged in the business of reselling the goods so purchased from the dealer or jobber, there is no tax on the sale by the dealer to him, although the latter may, occasionally but rarely, take from his stock certain of the goods, supplies, and parts and use them on his own car or in rendering some desultory service to another. The question controlling on the dealer would be dependent upon the usual course of business of such customer, not what he might do on an isolated occasion. The dealer is bound to know only the general customary business of his customer. It may be a part of the business of the customer in the usual course, both to render service and to sell parts out of the stock purchased from the dealer, so that when the sale is made, the goods are not separated for resale from those which are used in service, and which would be subject to the tax on the sale by the dealer to the customer thus dealing with the goods. *But the dealer, as we have said, is bound at his peril when he sells to a customer to know whether the customer is engaged in consuming such goods as a part of his course of business. If so, the sale of them all is taxable, though the customer may also out of the same lot habitually resell some of them to others.*

"But the customer may have two separate and distinct places of business; one of goods for resale, and one of goods for use and consumption. When so, and the dealer sells and delivers such goods for and at the place of resale, the tax on such original sales is not due to be paid. When they are not so delivered, the tax is to be paid.

"Responsibility for what is finally done with the merchandise when good faith and diligence are used at the time of the sale cannot be visited upon the dealer. *But he must exercise diligence to know the course of business of his customer, and see that the goods sold are delivered at a place where the custom of the business is known to be for resale only, or take the consequences.*" (Emphasis supplied.) 235 Ala. 49–50, 177 So. 148.

■ Under the decision in the Cody case, supra, an averment that petitioner relied upon the representations of the retail automobile dealers that the merchandise was

purchased for resale is not sufficient to show error in the assessment of the State Department of Revenue. The burden was upon petitioner to determine the nature of the business of the said purchasers. There is no averment in the bill that petitioner did not know that the said automobile dealers were engaged in the business of reconditioning used cars for sale although he had made diligent effort to ascertain the nature of their business. Such averment was necessary under the Cody case, supra.

▪ Petitioner next seeks to avoid liability for the tax by averring that for a period of nine years, including the period covered by the assessment against him, the State Department of Revenue had not attempted to collect sales tax from dealers such as petitioner on transactions such as are here involved and thereby the State Department of Revenue in effect construed such sales to be wholesale sales, and that in treating such sales as wholesale sales, he relied in good faith upon the construction of the State Department of Revenue.

As before pointed out, this court in the Cody case, supra, held such transactions as those with which we are here concerned, to be taxable, and the operator of the automotive supply house to be liable for the tax. The Cody case was decided in 1937, several years prior to the period of time involved in this assessment. In view of the decision in the Cody case, those charged with the administration of the sales tax law could not, by either non-action or by administrative regulation, estop the State from collecting taxes held to be due in that case. Nor can the petitioner avoid liability for the tax on the ground that those charged with the administration of the sales tax law failed to issue or promulgate any regulation affirmatively asserting that such transactions were taxable. This court in the Cody case, supra, settled that question.

On February 23, 1947, the Attorney General rendered an opinion which in effect held that the State could not collect the sales tax from persons who purchased merchandise from a wholesaler on a representation that it was for resale, thereby avoiding the tax, and who subsequently consumed such merchandise. 38 Ops.Atty.Gen. 37 (1945). Thereafter, by Act No. 305, approved August 13, 1947, the legislature amended subsec. (j) of § 752, Title 51, Code 1940, General Acts 1947, p. 160, No. 305, by inserting therein the following provision: "The term 'sale at retail' or 'retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon." § 752, Title 51, Code 1940, as amended; Cumulative Supp., Vol. 7, Code 1940, pp. 198–199.

It is obvious that the said 1947 act can have no application to this case, inasmuch as all of the transactions here involved occurred prior to the effective date of said act. The Cody case, supra, settled the question as to tax liability during the period covered by this assessment and the said 1947 act, supra, has prospective operation only.

We are of the opinion that the trial court correctly sustained the State's demurrer.

The decree of the trial court is affirmed.

Affirmed.

BROWN, FOSTER, and SIMPSON, JJ., concur.