98 So.2d 422

STATE of Alabama

v.

J. W. HAYES, d/b/a Hayes Chevrolet Company.

5 Div. 649.

Supreme Court of Alabama.

Jan. 17, 1957.

Rehearing Granted Nov. 21, 1957.

Reynolds & Reynolds, Clanton, Deramus, Fitts, Johnston & Mullins, Birmingham, and Frank Broadway, Montgomery, for appellee.

John Patterson, Atty. Gen., and Willard W. Livingston, Asst. Atty. Gen., for appellant.

LAWSON, Justice.

This is an appeal by the State from a final decree of the Chilton County Court, in Equity, vacating and setting aside a sales tax assessment made by the State Department of Revenue against appellee, to whom we will refer hereafter as the taxpayer.

In State v. Le Croy, 254 Ala. 637, 49 So. 2d 553, this court held that appeals from final sales tax assessments made by the State Department of Revenue may be taken to the Chilton County Law and Equity Court, in Equity, (now the Chilton County Court), and that holding is not questioned on this appeal.

Section 753, Title 51, Code 1940, was amended by an Act approved June 22, 1951, Acts of Alabama, 1950–51, p. 348, so as to read in pertinent parts as follows:

"753. There is hereby levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities and in the amount to be determined by the application of rates against gross sales, or gross receipts, as the case may be, as follows:

\* \* \* \* \* \*

"(d) Upon every person, firm or corporation engaged, or continuing within this state, in the business of selling any used automotive vehicle or truck trailer and semi-trailer, where such vehicles are bought for the purpose of resale, an amount equal to one percent of the gross proceeds of the sale of said automotive vehicle or truck trailer and semi-trailer; provided, however, this subsection shall not apply to the sale of any used automotive vehicle or truck trailer or semi-trailer where it was acquired as part of the consideration for the sale, trade, or exchange, in this state of any new or used

motor vehicle, truck trailer or semi-trailer."

See 1955 Cum. Pocket Part to Vol. 7, Code 1940, pp. 362, 363.

During the period of time covered by the assessment here involved, April 1, 1952, through September 30, 1954, taxpayer was engaged in the business of selling new and used automobiles in the city of Clanton.

The assessment which the trial court vacated was based on several sales of used automobiles made by taxpayer during the period of time described above and upon which taxpayer failed to remit sales tax to the State. The circumstances leading up to, as well as those surrounding, all of the sales involved are identical, so for the purpose of this appeal we will treat the assessment here involved as having been made because of the sale of one used automobile by taxpayer during the period of time covered by the assessment.

The automobile when new was owned by and was in the possession of the taxpayer for sale. An unnamed individual, to whom we will refer hereafter as John Doe, secured the new automobile from taxpayer by making a down payment and by entering into a written instrument called by the parties and, hence, by us a conditional sale contract, under the terms of which the title to the automobile was to remain in the taxpayer, his transferee or assignee until John Doe paid all of the purchase price.

The conditional sale contract was executed on a standard form furnished by General Motors Acceptance Corporation, referred to hereafter as GMAC, a wholly owned subsidiary of General Motors Corporation, which subsidiary is engaged primarily in the business of buying and selling commercial paper. Printed on the conditional sale contract is what is termed "Dealer's Recommendation, Assignment and Guaranty," which reads:

"For value received, undersigned does hereby sell, assign and transfer

to the General Motors Acceptance Corporation his, its or their right, title and interest in and to the within contract, herewith submitted for purchase by it, and the property covered thereby and authorizes said General Motors Acceptance Corporation to do every act and thing necessary to collect and discharge the same.

"The undersigned certifies that said contract arose from the sale of the within described property, warranting that title to said property was at time of sale and is now vested in the undersigned free of all liens and encumbrances; that said property is as represented to the purchaser of said property by the undersigned and that statements made by the purchaser of said property on the statement form attached hereto are true to the best of the knowledge and belief of the undersigned.

"In consideration of your purchase of the within contract, undersigned guarantees payment of the full amount remaining unpaid thereon, and covenants if default be made in payment of any instalment therein to pay the full amount then unpaid to General Motors Acceptance Corporation upon demand, except as otherwise provided by the terms of the present General Motors Acceptance Corporation Retail Plan. Liability of the undersigned shall not be affected by any settlement, extensions or variation of terms of the within contract effected with, or by the discharge or release of the obligation of the purchaser or any other person interested, by operation of law or otherwise. Undersigned waives notice of acceptance of this guaranty and notices of non-payment and non-performance."

The taxpayer executed the so-called Dealer's Recommendation, Assignment and Guaranty, referred to hereafter simply as the Assignment, and it seems to be agreed by all parties that upon such execution the title to the automobile was then in GMAC.

The GMAC Retail Plan referred to in the Assignment provides that the taxpayer guarantees payment to GMAC of the unpaid balance of the conditional sale contract in case of default by the customer, in this instance John Doe, provided that GMAC repossesses the automobile and delivers it to appellee within ninety days after default. However, under that plan GMAC was under no duty to deliver the automobile to the taxpayer although repossessed by GMAC within ninety days from default by John Doe and under the plan no obligation at all was placed on the taxpayer in the event the repossession by GMAC occurred more than ninety days after default.

John Doe defaulted in his payment to GMAC and within ninety days thereafter GMAC repossessed the automobile and delivered it to the taxpayer, who paid to GMAC the unpaid balance due on John Doe's contract.

At the expense of repetition, we observe that all parties to this appeal seem to agree that under the terms of the conditional sale contract the title to the automobile remained in the taxpayer, his transferee or assignee until John Doe paid the full purchase price. All parties agree that upon the execution of the Assignment by the taxpayer title passed to GMAC. All parties seem to agree that title to the automobile remained in GMAC until the automobile, after repossession, was delivered to the taxpayer in the manner and at the time heretofore outlined.

The word "bought" implies a completed transaction, a vesting of the right of title to and possession of the property sold. Bull v. Morrison, Tex.Civ.App., 241 S.W. 561.

The State takes the position that under the facts as outlined above taxpayer

"bought" the automobile in question from GMAC for the purpose of resale, and, hence, upon its subsequent sale by taxpayer as a used car he became liable to the State for sales tax.

The taxpayer admits that the automobile was "reacquired" by taxpayer for the purpose of resale, but argues that it was not "bought" within the meaning of that word as used in subdivision (d) of § 753, Title 51, Code 1940. Taxpayer says that under the transaction with GMAC he was but a guarantor and that his reacquisition of the automobile in the manner outlined was only the result of his performance of a contractual obligation and that even though title to and possession of the automobile did become his after he paid the obligation of John Doe to GMAC, the automobile was not "bought" as that word is used in the statutory provision here involved.

In the original opinion in this case we held, in effect, that the taxpayer bought the automobile in question from GMAC for the purpose of resale within the meaning of subdivision (d) of § 753, Title 51, Code 1940, and, hence, we concluded that sales tax was due on the transaction. Our holding was based simply on the fact that title passed from GMAC to the taxpayer.

Upon further consideration on rehearing we have concluded that the position taken by the taxpayer as set out above is correct. The fact that title passed from GMAC to taxpayer after the automobile was repossessed and then delivered to taxpayer should not be said to be conclusive that the transaction was in fact a taxable transaction, in view of all of the other prevailing circumstances.

The rehearing is granted, the original opinion is withdrawn, the reversal is set aside, and the decree of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and MERRILL, JJ., concur.