111 So.2d 912

**STATE of Alabama**

v.

**HELBURN CO., Inc.**

3 Div. 799.

Supreme Court of Alabama.

March 26, 1959.

Rehearing Denied May 14, 1959.

John Patterson, Atty. Gen., and Willard W. Livingston and Wm. H. Burton, Asst. Attys. Gen., for appellant.

Knabe & Nachman, Montgomery, for appellee.

LAWSON, Justice.

This is an appeal by the State from a final decree of the Circuit Court of Mont-

gomery County, in Equity, vacating and setting aside a deficiency sales tax assessment made by the State Department of Revenue against The Helburn Company, Inc., a corporation, the appellee here, which will be referred to hereafter as Helburn.

During the period of time covered by the assessment, October 1, 1952, through September 30, 1955, Helburn was engaged in the business of selling hotel and restaurant equipment and in the business of selling and installing air conditioning equipment. Under typical contracts with the United States and the State of Alabama Helburn furnished and installed air conditioning equipment in buildings belonging to those governments.

Helburn did not remit to the State Department of Revenue any sales tax on the air conditioning equipment so furnished on the theory that such equipment was sold by it to the governments involved and, hence, under the express terms of the Sales Tax Law, no such tax was due. Subsections (a) and (b) of § 755, Title 51, Code of 1940, as amended.

The Department of Revenue after auditing taxpayer's records and examining the pertinent contracts determined that Helburn was liable for sales tax on the equipment furnished by it and accordingly included in a deficiency assessment an amount admitted to be correct if any sales tax is due on such transactions.

Such action of the Department of Revenue was based on the theory that Helburn was liable for sales tax under the hereafter quoted parts of Subdivision (j), Subsection (1), § 752, Title 51, Code of 1940, as amended, which for the purposes of this opinion we will hereafter refer to simply as Subdivision (j):

"The term 'sale at retail' or 'retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, * * *; and such wholesale purchaser shall report and pay the taxes thereon."

Helburn's business, at the time of the transactions presently under consideration and for a number of years prior thereto, was primarily that of a retail merchant. Helburn was so licensed by the State Department of Revenue. For the purposes of this opinion, but for those purposes only, it will be conceded that the evidence shows that Helburn purchased the air conditioning equipment at wholesale, and later withdrew such equipment from its stock of merchandise and had the equipment installed as parts of the government buildings by subcontractors in compliance with Helburn's obligations under its construction contracts with the governments concerned.

Did such conduct on the part of Helburn constitute a "withdrawal, use or consumption" of tangible personal property bought at wholesale within the meaning of Subdivision (j) which was added to our Sales Tax Law by Act No. 305, approved August 13, 1947, General Acts 1947, page 160?

Subdivision (j) has not been considered by the State Department of Revenue to be necessary to the collection of sales taxes on equipment furnished and installed under similar contracts with private individuals. That Department, prior to the time that Subdivision (j) became a part of our Sales Tax Law, considered such contracts with private individuals to encompass an ordinary sale of the equipment furnished and installed and has permitted the dealer to pass the tax on to the buyer whereas Subdivision (j) provides that the taxes due thereunder are to be paid by the party who purchases at wholesale. And there has been no change of policy in regard to transactions with private individuals since the adoption of Subdivision (j).

We do not think it can be said that Subdivision (j) was enacted to enable the State to collect sales taxes on transactions of the kind here involved which retail dealers have with governments which are

immune or exempt from State sales tax. The State Department of Revenue did not so construe Subdivision (j) from the time of its enactment in August, 1947, until a short time prior to March, 1956, when the assessment against Helburn here involved was entered. The record shows that this assessment results from the fact that the "State" (Department of Revenue) "revised" its position in regard to such transactions.

■ In our opinion, Subdivision (j) was enacted to reach transactions which could not be taxed because there was a withdrawal and use or consumption by the purchaser at wholesale but no sale by him to another. Hamm v. Windham, 254 Ala. 356, 48 So.2d 310; Merriwether v. State, 252 Ala. 590, 42 So.2d 465, 11 A.L.R.2d 918; State Tax Commission v. Burns, 236 Ala. 307, 182 So. 1; 38 Op.Atty.Gen. 37 (1945).

■ In determining and giving effect to legislative intent, courts may look to the history of a statute, conditions which led to its enactment, ends to be accomplished and evils to be avoided or corrected. Southern Express Co. v. I. Brickman & Co., 187 Ala. 637, 65 So. 954; American Bakeries Co. v. City of Opelika, 229 Ala. 388, 157 So. 206; Henry v. McCormack Bros. Motor Car Co., 232 Ala. 196, 167 So. 256.

The administrative construction given by the highest officials charged with the duty of administering tax laws, while not binding on the State, is to be considered in the interpretation of a statute which has not been interpreted by the courts. State v. Advertiser Co., 257 Ala. 423, 59 So.2d 576; Cole v. Gullatt, 241 Ala. 669, 4 So.2d 412. Cf. Merriwether v. State, supra.

■ Subdivision (j) deals with coverage. not with an exemption, and, hence, it should be construed strictly against the taxing power and with favor indulged toward the taxpayer. Doby v. State Tax Commission, 234 Ala. 150, 174 So. 233; Jordan Undertaking Co. v. State, 235 Ala. 516, 180 So. 99. See State v. Ben R. Goltsman & Co. (Use Tax), 261 Ala. 318, 74 So.2d 414.

■ In view of the history of Subdivision (j), the construction placed on it for almost ten years by the State Department of Revenue and the rule that it must be strictly construed against the taxing power, we hold that it is not authority for the imposition of a sales tax on Helburn based on the equipment furnished by Helburn in performing the contracts here involved, and that the trial court correctly vacated and set aside the part of the assessment based thereon. So, the question which we posed above is answered in the negative.

We wish to make it clear that we are not here dealing with use tax but with a sales tax assessment based on Subdivision (j).

The remaining part of the deficiency assessment was concerned with the sale by Helburn of air conditioning and restaurant equipment to individuals and business concerns who secured the equipment by making a down payment and by executing written instruments considered by the parties as being conditional sale contracts, under the terms of which title to the equipment was to remain in Helburn, his transferee or assignee until the purchaser paid all of the purchase price.

Helburn assigned and transferred to the First National Bank of Montgomery not only its rights under the contracts but also "the chattels referred to herein." The assignments were with recourse.

Helburn paid sales tax on the full purchase price of the several items of equipment. The purchasers defaulted. Helburn paid to the bank the unpaid purchase price and then repossessed the equipment.

Thereafter, Helburn in its sales tax returns to the Department of Revenue

claimed credit for the amount of sales tax which it had remitted to the Department of Revenue on that part of the purchase price which the purchasers did not pay.

For many years the Department of Revenue allowed such credits based on a policy formulated in the early days of the Sales Tax Law. However, that Department began to disallow such claimed credits shortly prior to the deficiency assessment here involved in which was included an amount equal to the credits claimed by Helburn.

Section 757, Title 51, Code of 1940, reads:

"Any person taxable under this article, having cash and credit sales, may report such cash sales, and the taxpayer shall thereafter include in each monthly report all credit collections made during the month preceding, and shall pay the taxes due thereon at the time of filing such report, but in no event shall the gross proceeds of credit sales be included in the measure of the tax to be paid until collections of such credit sales shall have been made."

The State contends that when Helburn assigned and transferred to the bank not only the contracts but the title to the property therein described, sales of tangible personal property then occurred which were subject to the sales tax; and that the credits claimed were improper.

Title 51, § 753, Code 1940, as amended, imposes a three percent tax on sales of tangible personal property. It provides in part:

"There is hereby levied, * * * a privilege or license tax against the person on account of the business activities and in the amount to be determined by the application of rates against gross sales, or gross receipts, as the case may be, as follows:

"(a) Upon every person, * * * engaged, or continuing within this state, in business of selling at retail *any tangible personal property* whatsoever, including merchandise and commodities of every kind and character, (*not including, however,* bonds or other *evidences of debts* or stocks), an amount equal to three percent of the gross proceeds of sales of the business * * *." (Emphasis Supplied.)

The term "gross proceeds of sales" is defined by Title 51, § 752(f), as amended, as the *"value proceeding or accruing from the sale of tangible personal property."* (Emphasis Supplied.)

In determining the validity of the aspect of the deficiency assessment presently under consideration, the transactions above described must be measured against the provisions of Title 51, § 753, above. (1) Did the assignment and transfer to the bank constitute the sale of tangible personal property? (2) Did value proceed or accrue to Helburn when it received funds from the bank? (3) Does the assignment to the bank constitute a sale, or was it a loan? In our opinion if the answer to any of the above questions is in the negative the aspect of the deficiency assessment now under consideration is invalid.

The answer to the first question is dependent on the effect of the contract. If Helburn still retained the general title to the equipment after entering into the contracts sales of tangible personal property occurred upon the subsequent assignments to the bank. If, however, the contracts had the effect of passing general title to the buyers, Helburn at the time of assignments to the bank had no title to tangible personal property and, of course, it could not sell to the bank that which it did not own.

Our cases are to the effect that in transactions concerning retention of title contracts similar to those here involved the seller actually passes the "general and

beneficial ownership" to the purchaser, retaining only "a special property," "a charge on the property as security for the balance due," a form of lien on the property or a secured evidence of indebtedness. Bern v. Rosen, 259 Ala. 292, 66 So.2d 711; General Motors Acceptance Corporation v. Crumpton, 220 Ala. 297, 124 So. 870, 65 A.L.R. 1313; State v. White Furniture Co., 206 Ala. 575, 90 So. 896.

In our opinion, such assignments were no more subject to the sales tax than would be the sale of a mortgage on tangible personal property. In actuality neither is anything more than the sale of an indebtedness.

We are of the opinion that for this reason alone the part of the assessment here involved is invalid.

However, we are also of the opinion that under the transactions above described, no value proceeded or accrued to Helburn until the installments were paid by the purchasers and Helburn's liability to the bank correspondingly decreased. From an accounting standpoint, Helburn was in the same position before the assignments as he was thereafter. Helburn had increased its cash on hand but had correspondingly increased its potential liability. Its potential liability would decrease and value would accrue only as installment payments were made.

We are also of the opinion that for the purposes of determining sales tax liability, where in case of doubt all presumption should favor the taxpayer, the transactions above described should be considered loans and not sales.

While the factual situations are somewhat different the conclusion which we have reached is in accord with our holding in the case of State v. Hayes, 266 Ala. 632, 98 So.2d 422.

We are of the opinion that the trial court correctly vacated and set aside both aspects of the deficiency assessment. It follows that the decree of the trial court is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.