IOWA AUTO DEALERS ASSOCIATION
and Elbert Chevrolet, Inc.,
Appellees/Cross-Appellants,

v.

IOWA DEPARTMENT OF REVENUE
and Gerald Bair, Director, Iowa Department of Revenue, Appellants/Cross-Appellees.

No. 64362.

Supreme Court of Iowa.

Feb. 18, 1981.

Thomas J. Miller, Atty. Gen. and Harry Griger and Thomas Donahue, Asst. Attys. Gen., for appellants/cross-appellees.

W. Don Brittin, Jr., of Nyemaster, Goode, McLaughlin, Emery & O'Brien, Des Moines, for appellees/cross-appellants.

Considered by LeGRAND, P. J., and UH-LENHOPP, HARRIS, McCORMICK and ALLBEE, JJ.

McCORMICK, Justice.

The determinative question here is whether used car dealers are required to pay sales tax on automobile repair services performed on used cars owned and held by them for sale. The district court held that a portion of an Iowa Department of Revenue rule implementing such a requirement was unreasonable and exceeded the department's authority. The court awarded attorney fees to the car dealers. The department and its director have appealed the judgment invalidating the subrule, and the car dealers have cross-appealed to challenge the sufficiency of the fee award. We reverse on the appeal and affirm on the cross-appeal.

The case arose as a petition for judicial review in which petitioners Iowa Auto Dealers Association and Elbert Chevrolet, Inc., challenged 730 I.A.C. section 26.2(b), part of a rule adopted by respondents Iowa Department of Revenue and its director, Gerald Bair. The subrule purported to define a situation in which a service would not be considered as purchased for resale within the meaning of section 422.42(3), The Code:

> B owns a used car lot and contracts an automobile repair job to C. B cannot purchase the repair service for resale merely because at some later date the automobile may be sold. B is in the business of selling used cars and is the consumer of the service since he or she owns the car. See *Merriwether v. State*, 252 Ala. 590, 42 So.2d 465, 11 A.L.R.2d 918 (1949).

Section 422.42(3) defines "retail sale" and "sale at retail" in material part as "the sale to a consumer or to any person for any purpose, other than for ... resale ... of taxable services ...."

Before adopting 730 I.A.C. section 26.2, the department followed the procedure provided in section 17A.4, The Code. The administrative rules committee objected to the subrule as "unreasonable, arbitrary, capricious [and] otherwise beyond the authority delegated to the agency" pursuant to section 17A.4(4)(a). Nevertheless respondents completed the action necessary to adopt the entire rule. Subsequently petitioners filed a timely petition for judicial review.

Applicable principles governing judicial review of agency action in rulemaking are explained in *Schmitt v. Iowa Department of Social Services*, 263 N.W.2d 739, 743 (Iowa 1978). When an objection to a rule is procedurally correct, the burden to prove the rule's substantive validity shifts to the agency in the judicial review proceeding. No dispute exists concerning the procedural adequacy of the committee's objection in this case. Therefore respondents have the burden in this action to establish that the portion of the rule objected to "is not unreasonable, arbitrary, capricious or otherwise beyond the authority delegated to it." *See Schmitt*, 263 N.W.2d at 744. Otherwise the subrule is invalid under the relevant criteria in section 17A.19(8).

Through its director the department has "the power and authority to prescribe all rules not inconsistent with the provisions of [chapter 422], necessary and advisable for its detailed administration and to effectuate its purposes." § 422.68(1). Rules which contravene statutory provisions or exceed an agency's statutory authority are invalid. *Sorg v. Iowa Department of Revenue*, 269 N.W.2d 129, 131 (Iowa 1978). However, a rule is within the agency's authority if a rational agency could conclude that the rule is within the statutory mandate. *Hiserote Homes, Inc. v. Riedemann*, 277 N.W.2d 911, 913 (Iowa 1979).

Special additional principles apply in tax cases. Statutes which impose taxes are construed liberally in favor of the taxpayer and strictly against the taxing body. It must appear from the language of a statute that the tax assessed against the taxpayer was clearly intended. *Scott County Conservation Board v. Briggs*, 229 N.W.2d 126, 127 (Iowa 1975). However, when the taxpayer relies on a statutory exemption, the exemption is construed strictly against the taxpayer and liberally in favor of the taxing body. Doubts are

resolved against exemption. *Iowa Method-ist Hospital v. Board of Review*, 252 N.W.2d 390, 391 (Iowa 1977).

The district court held subrule 26.2(b) invalid on two grounds. One was based on a finding that the subrule imposed a tax on services used in processing tangible personal property for use in a taxable retail sale. The other was based on a finding that it imposed a tax on a person other than the ultimate user of the services. These grounds are related, but we will examine them separately.

I. *The processing issue.* No doubt exists that the statute imposes a tax of three percent upon gross receipts from automobile repair services. Those services are specifically enumerated as taxable in section 422.43: "automobile repair; battery, tire and allied . . . ." The issue concerning processing is whether the repair of used cars owned and held for sale by a dealer comes within an exception to the general definition of "services" in section 422.42(13).

In material part, section 422.42(13) defines services as "all acts or services rendered, furnished or performed, other than . . . services used in processing of tangible personal property for use in taxable retail sales or services, for an 'employer' as defined in section 422.4, subsection 15, for a valuable consideration by any person engaged in any business or occupation specifically enumerated in this division." The trial court found merit in petitioners' contention that automobile repairs are "processing" within the meaning of this definition.

■ Although petitioners assert otherwise, we find they are claiming the benefit of an exemption from taxation. This conclusion is supported by the express language of the definition, by legislative history, and by our cases. Under the definition of "services" in section 422.42(13), all services enumerated in section 422.43 are subject to the tax "other than" those excepted, including those coming within the processing provision. This is the language of exemption. Moreover, when the provision was adopted, the committee sponsors attached this explanation: "This bill provides a sales tax exemption for . . . services used in processing tangible personal property which will ultimately be subject to the sales tax." S.F. 624, 1969 Session, 63rd G.A., ch. 247. Finally, the court has previously recognized it is an exemption. *See, e. g., Fischer Artificial Ice and Cold Storage Co. v. Iowa Tax Commission*, 248 Iowa 497, 499, 81 N.W.2d 437, 439 (Iowa 1957). Because the processing provision is an exemption, it is strictly construed against petitioners. *Id.*

In contending automobile repairs are processing, petitioners rely on a broad dictionary definition of the term:

2. to subject to a particular method, system or technique of preparation, handling, or other treatment designed to effect a particular result: put through a special process: as (a)(1): to prepare for market, manufacture or other commercial use by subjecting to some process.

*Webster's New Third International Dictionary* (unabridged) 1808 (1971). Assuming this definition would embrace automobile repairs, we do not agree it is applicable here. The statute and the cases show the term has a narrower meaning.

■ Although processing is not defined in subsection 13, it is defined in subsection 3, which provides in relevant part: "Tangible personal property is sold for processing within the meaning of this subjection only when it is intended that such property shall by means of fabrication, compounding, manufacturing, or germination become an integral part of other tangible personal property intended to be sold ultimately at retail . . . ." This definition was not in The Code when *Kennedy v. State Board of Assessment and Review*, 224 Iowa 405, 276 N.W. 205 (1937), was decided. *See* § 6943-f38(c), The Code 1935. Thus, petitioners' reliance on the court's resort to a dictionary definition of processing in *Kennedy* is misplaced.

The definition in subsection 3 of section 422.42 was in the statute when the processing exception was added to subsection 13. *See* § 422.42(3), The Code 1966. Therefore we believe the legislature intended the term

to have an analogous meaning in the services context. Because they affect the same subject, the provisions are to be harmonized if possible. *Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977). The legislative intent that the term have a consistent meaning in each context is reinforced by the fact it has essentially the same definition in section 423.1(1), relating to use tax, as it does in section 422.42(3).

Furthermore, this court has already recognized this conceptual similarity. It has said that "processing" as the term is used in chapters 422 and 423 "refers to an operation whereby raw material is subjected to some special treatment by artificial or natural means which changes its form, context, or condition, and results in marketable, tangible personal property." *Linwood Stone Products Co. v. Department of Revenue*, 175 N.W.2d 393, 395 (Iowa 1970). Processing essentially connotes the transformation of raw material into a finished product. *See Ramco, Inc. v. Director, Department of Revenue*, 248 N.W.2d 122, 123 (Iowa 1976).

Under this definition, repair of used cars to enhance their sale value is not processing. Although repairs ordinarily make an automobile more attractive to a purchaser, the service does not convert raw material into a finished product.

In addition, the explanatory note attached to the amendment creating the processing exemption supports the conclusion that the repair of used automobiles held for sale is not exempt. According to the explanation, the provision is intended to exempt "services used in processing tangible personal property which will ultimately be subject to the *sales* tax." S.F. 624, 1969 Session, 63rd G.A., ch. 247. (emphasis supplied). No sales tax is imposed on the sale of vehicles subject to registration. § 422.-45(4). Instead the purchaser of the vehicle is assessed a use tax. §§ 423.2, .4, .6(1), .7, and .8. These taxes are distinct. A sales tax is a tax on the freedom of purchase, whereas a use tax is a tax on the enjoyment of what was purchased. *McLeod v. J. E. Dilworth Co.*, 322 U.S. 327, 330, 64 S.Ct.

1023, 1026, 88 L.Ed. 1304, 1306–07 (1944). Thus, used cars are not included in the class of property to which the processing exemption was intended to apply.

Petitioners rely on *W. J. Sandberg Co. v. Iowa State Board of Assessment and Review*, 225 Iowa 103, 278 N.W. 643, *modified*, 225 Iowa 111, 281 N.W. 197 (1938), for a contrary result. *Sandberg* involved a rule subjecting shoe repairmen to a sales tax imposed by statute on retail sales "to a consumer or to any person for any purpose, other than for processing or resale . . . ." A seller of leather materials challenged the rule, alleging the owners of the shoes were the consumers of the materials rather than the repairmen. The court upheld the rule, finding that sales of leather and other materials to shoe repairmen were sales at retail and that the repairmen were consumers within the meaning of the statute. The opinion contains discussion in which the court rejected what it characterized as a "very remote" analogy between shoe repairmen and auto dealers who provide car repair services. Petitioners assert that the court implied automobile repair is processing. This implication is tenuous at best, particularly in light of the fact the meaning of processing was not an issue in the case. In any event, we believe the cases which have dealt directly with the processing exemption are far better authority for determining when it is applicable.

We hold that the processing exemption is inapplicable in this case. The district court erred in striking the subrule on that ground.

II. *The ultimate user issue.* The second ground of invalidity relied on by the district court was based on the second sentence of the definition of "services" in section 422.-42(13). The definition contains two sentences:

"Services" means all acts or services rendered, furnished or performed, other than services performed on tangible personal property delivered into interstate commerce, or services used in processing of tangible personal property for use in taxable retail sales or services, for an

"employer" as defined in section 422.4, subsection 15, for a valuable consideration by any person engaged in any business or occupation specifically enumerated in this division. *The tax shall be due and collectible when the service is rendered, furnished, or performed for the ultimate user thereof.* (emphasis added). The court construed the second sentence as if it read: "The tax shall be due and collectible *only if* the service is rendered, furnished, or performed for the ultimate *beneficiary of the service.*" Under this construction, the word "when" imposes a condition on taxability of services and does not merely fix the time when liability for the tax accrues. This construction also identifies the purchaser of the used car as the "ultimate user" of repair service.

The sentence is susceptible to an alternative construction. It may merely fix the time when liability for the tax accrues. This would be the result if the word "when" refers to the time of performance of the service. The sentence would then be construed as if it read: "The tax shall be due and collectible *at the time* the service is rendered, furnished, or performed for the ultimate user thereof." Under this construction it does not matter who the "ultimate user" is. The time of performance is the same whether the purchaser of services is the ultimate recipient of the benefit or not. So construed, the point of the provision is simply to make the tax due and collectible at the time the service is complete even if the service is not being purchased by the ultimate beneficiary.

 In determining which construction of the provision is correct, we must consider all parts of the statute without according undue importance to any single or isolated portion. Moreover, a statute should not be construed so as to make any part of it superfluous unless no other construction is reasonably possible. *Hanover Insurance Co. v. Alamo Motel*, 264 N.W.2d 774, 778 (Iowa 1978). Applying those principles here, we believe the second sentence in subsection 13 merely fixes the time when liability for the tax accrues.

A comparable provision appears in subsection 9, relating to sales of building materials, supplies and equipment in certain situations. The final sentence in that subsection provides: "The sales tax shall be due in the reporting period *when* the materials, supplies and equipment are withdrawn from inventory for construction purposes or *when* sold at retail." (emphasis added). In that sentence, the word "when" obviously refers to a point in time rather than taxability. This is an indication a similar meaning was intended by use of analogous language in subsection 13.

A stronger reason is that the 1969 amendment adding the processing exemption to the definition of services in subsection 13 would be superfluous if the second sentence of the provision limited taxability of services to purchases of services by ultimate beneficiaries. The second sentence was in subsection 13 prior to the amendment. *See* 1967 Session, 62nd G.A., ch. 348, § 19. If it precluded the taxing of all services on property held for resale, no purpose would have been served by adding an exemption providing merely one situation in which services on property held for resale would not be taxed.

Viewing the statute as a whole, giving similar effect to analogous provisions, and giving effect to every part of the statute, we conclude that the second sentence of subsection 13 fixes the time at which the tax is due and collectible. It does not limit taxability to services purchased by ultimate beneficiaries. Consequently it does not bar taxation of the services involved in this case.

The district court erred in holding subrule 26.2(b) invalid on this ground.

We find the subrule is not unreasonable, arbitrary or capricious or otherwise beyond the authority of respondents. We hold they carried their burden to establish the validity of the subrule as required by section 17A.4(4)(a). They have shown the substantial rights of the petitioners are not prejudiced by the subrule under relevant criteria in section 17A.19(8).

Therefore the validity of the subrule should have been sustained. In so holding, we endorse the subrule's legal effect rather than its form. We recognize that our holding rests on a different basis than is expressed in the subrule.

III. *The cross-appeal.* Because we uphold the validity of the subrule, petitioners are not entitled to an award of attorney fees under section 17A.4(4)(b). Consequently their cross-appeal challenging the sufficiency of the attorney fee award in district court is moot. Nor are they entitled to an award of attorney fees in this court.

REVERSED ON THE APPEAL; AFFIRMED ON THE CROSS–APPEAL.